STATE OF CONNECTICUT *v.* MARK J. CHICANO
(13663)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 4—decision released December 25, 1990

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Carlson* and *Dennis O'Connor,* assistant state's attorneys, for the appellee (state).

CALLAHAN, J. The defendant, Mark J. Chicano, was charged in a substitute information with three counts of the crime of felony murder in violation of General Statutes § 53a-54c,[1] three counts of the crime of mur-

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument;

der in violation of General Statutes § 53a-54a (a),[2] one count of the crime of capital felony in violation of General Statutes § 53a-54b (8),[3] one count of the crime of injury to a child in violation of General Statutes § 53-21,[4] and one count of the crime of burglary in the second degree in violation of General Statutes § 53a-102 (a).[5] After a trial before a three judge panel, the defendant was convicted of three counts of felony murder, three counts of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2),[6]

and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] General Statutes § 53a-54a (a) provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] "[General Statutes] Sec. 53a-54b. CAPITAL FELONY. A person is guilty of a capital felony who is convicted of any of the following . . . (8) murder of two or more persons at the same time or in the course of a single transaction."

[4] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[5] General Statutes § 53a-102 (a) provides: "BURGLARY IN THE SECOND DEGREE; CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[6] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person,

one count of injury to a child and one count of burglary in the second degree. With respect to the intentional murder charges, the three judge panel found that the state had proven the elements of murder but convicted the defendant of manslaughter in the first degree because it found that he had proven the affirmative defense of extreme emotional disturbance as set forth in § 53a-54a (a). The defendant was acquitted of the capital felony charge on the basis of the court's conclusion that he was guilty of manslaughter in the first degree rather than murder. The defendant was sentenced to three consecutive terms of sixty years imprisonment for the felony murder convictions, three twenty year terms of imprisonment for the manslaughter convictions, to be served consecutive to each other and concurrent to the three felony murder sentences, ten years for the injury to a child conviction and ten years for the burglary conviction. The panel ordered that the injury to a child and burglary sentences run consecutive to each other and to the manslaughter sentences but concurrent to the felony murder sentences. The defendant's total effective sentence of 180 years imprisonment, therefore, is based on his three convictions for felony murder. The defendant appealed to this court pursuant to General Statutes § 51-199 (b) (3).[7]

he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection . . . ."

[7] General Statutes § 51-199 (b) (3) provides: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years."

On appeal, the defendant claims that his rights guaranteed by the double jeopardy clause were violated by: (1) his convictions for both felony murder and manslaughter in the first degree; and (2) his convictions for both injury to a child and manslaughter in the first degree. The defendant also claimed that the trial court erred in denying his motion for a psychiatric examination pursuant to General Statutes § 17-244. He subsequently withdrew this last claim of error.

We agree with the defendant that his rights under the double jeopardy clause were violated by his conviction for both felony murder and manslaughter in the first degree and we therefore remand the case to the trial court with direction to combine his convictions for three counts of manslaughter in the first degree with his convictions for three counts of felony murder and vacate his manslaughter sentences. Combining these convictions will leave unchanged the total effective sentence of imprisonment. In view of our disposition of the defendant's first claim, we conclude that his second claim is moot and therefore do not address it.

The three judge panel reasonably could have found the following facts. The defendant and Ellen Babbit had been involved in a romantic relationship that had deteriorated by the end of 1986. At approximately 2 a.m. on February 28, 1987, the defendant went to see Babbit at her home in East Windsor. While he was outside her home, he saw Babbit's new boyfriend, Raymond Arnold, arrive by car and enter the house. The defendant then waited outside a bedroom window where he overheard the sounds of sexual activity. After waiting for half an hour, the defendant went into the house and hid in the bathroom for approximately one hour. He then went into the bedroom where Babbit and Arnold were now sleeping and hit Arnold on the head with a crowbar. When Babbit called out Arnold's name and

tried to protect him, the defendant became enraged and continued to strike Arnold, causing his death. The defendant then began punching and kicking Babbit and attempted to bind her. At this point Babbit's eleven year old son, Mark Babbit, Jr., entered the bedroom and screamed. Attempting to quiet the child, the defendant killed him by strangulation. When Ellen Babbit continued to resist his efforts to restrain her, the defendant struck her on the head twice with the crowbar and killed her.

## I

## A

The defendant argues that his conviction and sentencing for three counts of felony murder and three counts of manslaughter in the first degree violated his state and federal constitutional rights against double jeopardy. The defendant admits that this claim was not raised at trial, but maintains that it is reviewable under the criteria set forth in *State* v. *Golding,* 213 Conn. 233, 238–42, 567 A.2d 823 (1989), which restated the guidelines for review established in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). In *Golding,* we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra, 239–40. We conclude that the defendant's double jeopardy claim is reviewable under *Golding* and that his fundamental

constitutional right against double jeopardy was clearly violated by his convictions for both felony murder and manslaughter.

The state concedes that the first two prongs of the *Golding* test are satisfied inasmuch as: (1) the record is adequate for review of the double jeopardy claim, which requires reference only to the relevant statutes, the information, and the bill of particulars; *State* v. *John,* 210 Conn. 652, 695, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); and (2) the double jeopardy claim involves a fundamental constitutional right. The state does not make a harmless error argument but asserts that this claim is not reviewable because the alleged double jeopardy violation did not clearly deprive the defendant of a fair trial. We disagree.

This court has held that if double jeopardy claims arising in the context of a single trial are raised for the first time on appeal, these claims are reviewable under *State* v. *Evans,* supra. *State* v. *Snook,* 210 Conn. 244, 263, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); *State* v. *McCall,* 187 Conn. 73, 89, 444 A.2d 896 (1982). The *Evans* test for reviewability applied in the cited cases was whether "the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." (Emphasis added.) *State* v. *Evans,* supra, 70. On the basis of that precedent, we conclude that the third prong of the *Golding* test is satisfied and that the defendant's double jeopardy claim is reviewable.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." This constitutional pro-

vision is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). This constitutional guarantee serves three separate functions: (1) " 'It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial].' *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)." *State* v. *Lonergan,* 213 Conn. 74, 78–79, 566 A.2d 677 (1989), cert. denied,    U.S.    , 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990).

The defendant's claim that the double jeopardy clause bars his convictions for both felony murder and manslaughter in the first degree implicates the third type of constitutional protection. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri* v. *Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). " ' "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." ' *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986)." *State* v. *John,* supra, 693. The traditional test for determining

whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id., 304; *State* v. *Greco,* 216 Conn. 282, 291, 579 A.2d 84 (1990).

The defendant argues that under our decision in *State* v. *John,* supra,[8] convicting him of both felony murder and manslaughter in the first degree violated the double jeopardy clause. The state claims that *John* does not control this case and argues in the alternative that we should reconsider *John* if we should conclude otherwise.

The defendant in *State* v. *John,* was convicted of both felony murder and manslaughter in the first degree for a single homicide. Id., 695. It was not disputed in *John* that the charges of manslaughter and felony murder arose out of the same act. Id. This court found that the application of the *Blockburger* test led to the conclusion that there was no double jeopardy violation since each offense required proof of a fact that the other did not. Id.[9] On the basis of our review of the holding in *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed.

---

[8] The opinion referred to as *State* v. *John,* 210 Conn. 652, 557 A.2d 93 (1989), included the decisions for two separate appeals: *State* v. *John* (Docket No. 13056) and *State* v. *Seebeck* (Docket No. 13057). The holding relied upon by the defendant is actually part of the decision in *State* v. *Seebeck,* but we will refer to the case as *State* v. *John* for citation purposes.

[9] The court noted that felony murder requires proof of a predicate offense but does not require proof of a specific intent to do harm, while manslaughter in the first degree requires proof of intent to cause serious physical injury or death but does not require proof of a predicate offense. *State* v. *John,* 210 Conn. 652, 557 A.2d 93 (1989).

2d 971 (1985), and of the legislative history of the felony murder statute, § 53a-54c, however, we concluded that the legislature intended that manslaughter in the first degree and felony murder "should be treated as a single crime for double jeopardy purposes." *State* v. *John,* supra, 695. In *State* v. *Couture,* supra, 560, we stated that "[a]n indictment charging an accused with intentional and felony murder of a particular victim charges a single offense, committed conjunctively in two different ways."

The state does not dispute that the felony murder and manslaughter convictions in the present case arose out of the same act or transaction. The parties also agree that we properly applied the *Blockburger* test to the crimes of felony murder and manslaughter in the first degree in our decision in *State* v. *John.* The state argues, however, that *John* is not dispositive because the defendant in *John* was convicted of manslaughter in the first degree under a different subsection of § 53a-55 than the defendant in the present case. We disagree.

The defendant in *John* was charged with the crime of intentional murder in violation of General Statutes § 53a-54a (a),[10] and the jury found him guilty of the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[11] The defendant in the present case was charged with intentional murder and was convicted of manslaughter in the first degree under subsection (a) (2) of § 53a-55. A conviction under subsection (a) (1) of

[10] See footnote 2, supra, for the text of General Statutes § 53a-54a (a).

[11] See footnote 6, supra for the text of General Statutes § 53a-55 (a) (1).

Although the judgment in *State* v. *John,* 210 Conn. 652, 557 A.2d 93 (1989), did not specify the subsection of § 53a-55 under which the defendant was convicted, the jury charge on manslaughter addressed only subsection (a) (1) of § 53a-55, which applies when a person causes the death of another person while acting with the intent to cause serious physical injury.

§ 53a-55 connotes that the trier of fact found that the defendant had acted with the intent to cause serious physical injury rather than death. In contrast, a conviction under subsection (a) (2) of § 53a-55 connotes that the trier of fact found that the defendant had acted with the intent to cause death but under the influence of extreme emotional disturbance. The state claims that our holding in *John* does not govern double jeopardy claims arising from convictions under subsection (a) (2) of § 53a-55. This argument is based upon the state's assertion that under the common law there was a closer connection between felony murder and the category of first degree manslaughter referred to in subsection (a) (1), than between felony murder and the category of manslaughter referred to in subsection (a) (2).[12]

The state's argument misinterprets the basis for our holding in *State* v. *John,* supra, concerning the double jeopardy issue. In *John* we held that "[t]he history of the murder and felony murder statutes, read in conjunction with our holding in *Couture,* indicates that the legislature contemplated that only one punishment

---

[12] The state notes that under the common law the concept of murder included: (1) intentional homicide; (2) killing done with intent to cause grievous bodily harm; (3) unintentional homicide done under circumstances indicating a depraved mind or an abandoned and malignant heart; and (4) felony murder. See II A.L.I., Model Penal Code and Commentaries (1980) § 210.2, comment, pp.14–15. The state also notes that the origin of the crime of first degree manslaughter based on the defense of extreme emotional disturbance is the common law offense of voluntary manslaughter, which involved an intentional killing while under the heat of passion. See *State* v. *Yanz,* 74 Conn. 177, 179–80, 50 A. 37 (1901).

The foundation of the state's argument is that murder and voluntary manslaughter were separate crimes under the common law. The state claims that while the types of homicide at issue in *State* v. *John,* 210 Conn. 652, 557 A.2d 93 (1989), namely, felony murder and killing done with intent to cause serious injury, were the same offense under the common law, the types of homicide at issue in this case, felony murder and intentional murder under the influence of extreme emotional disturbance, were not the same crime under the common law.

would be imposed for a single *homicide,* even if that homicide involved the violation of two separate statutory provisions." (Emphasis added.) *State* v. *John,* supra, 696. In *John* we relied upon *Couture* and the relevant legislative history to conclude that the *intentional murder* and the felony murder of a particular victim are the same offense for double jeopardy purposes. This reasoning led us to conclude that *manslaughter in the first degree* and felony murder are also the same offense for double jeopardy purposes. *State* v. *John,* supra, 696–97. We extended this principle to manslaughter in the first degree because intentional murder, felony murder, and manslaughter in the first degree are all homicide offenses as defined under the homicide provisions of the General Statutes; General Statutes §§ 53a-54a through 53a-58a; not because felony murder and the category of manslaughter at issue in *John* were the same offense under the common law. Our holding in *John* patently applies to multiple convictions for a single homicide under the felony murder statute and any other homicide statute.

Conceding that the defendant's double jeopardy claim must prevail if we find that *John* is controlling, the state urges us to reconsider our holding in that case. The state argues that a review of the legislative history of the felony murder statute indicates that there exists no clear legislative intent to preclude conviction in a single trial for both manslaughter in the first degree and felony murder. Because we considered fully the legislative history of the felony murder statute in *State* v. *John,* supra, 696, we decline the state's invitation to reconsider this issue.

Having concluded that the defendant's rights under the double jeopardy clause were violated by his conviction and sentencing for both felony murder and manslaughter in the first degree, we must determine a

proper remedy for the violation. The defendant argues that we should vacate his felony murder sentences and merge his felony murder convictions into his manslaughter convictions, while the state asserts that we should vacate the defendant's manslaughter sentences and merge his manslaughter convictions into his felony murder convictions. The determination of the appropriate remedy involves two distinct issues: (1) deciding which of the convictions, felony murder or manslaughter, along with the applicable sentences, should be negated; and (2) determining whether the proper procedure on remand is to merge, or combine, the negated convictions with the remaining convictions or simply to vacate the negated convictions entirely.

## B

With respect to the first issue, the state argues that the manslaughter convictions should be abrogated because the prosecution proved the elements of felony murder and the defendant should be required to serve the longer sentences imposed by the three judge panel for that offense. The defendant makes two independent arguments as to why we should instead negate the felony murder convictions: (1) the defendant proved the elements of the affirmative defense of extreme emotional disturbance and he is entitled to the benefit of that defense; (2) the rule of lenity requires that doubts concerning the enforcement of a penal statute should be resolved against imposing the harsher punishment.

This court has never squarely addressed the issue of which convictions should be negated when a defendant has received multiple punishments for the same offense in a single trial in violation of the double jeopardy clause.[13] When faced with double jeopardy viola-

---

[13] In *State* v. *John,* 210 Conn. 652, 557 A.2d 93 (1989), as in the present case, the defendant's prison sentence for his manslaughter conviction was less than the sentence for his felony murder conviction. After determining

tions arising out of multiple convictions at a single trial for both greater and lesser included offenses, our policy has been to remand the case to the trial court with direction to vacate the conviction for the lesser offense. See *State* v. *Amaral,* 179 Conn. 239, 245, 425 A.2d 1293 (1979); *State* v. *Goldson,* 178 Conn. 422, 427, 423 A.2d 114 (1979). Our practice of eliminating the lesser conviction is consistent with the goal of "ensuring that a defendant is punished for whatever degree of a crime he is adjudged to be guilty of having committed." *United States* v. *Aiello,* 771 F.2d 621, 634 (2d Cir. 1985). Because we have followed this practice without discussing its underlying rationale, a brief discussion of the issue is appropriate. Although felony murder and manslaughter in the first degree do not constitute greater and lesser included offenses, the relevant factors bearing upon the decision of which conviction to negate when two convictions cannot both stand are the same regardless of whether one of the offenses is a lesser included offense of the other.

In *Green* v. *United States,* 365 U.S. 301, 302, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961), the defendant was convicted of robbing a bank in violation of 18 U.S.C. § 2113 (a) and assaulting or putting lives in jeopardy by using a dangerous weapon while committing a bank robbery in violation of 18 U.S.C. § 2113 (d). The defendant received a twenty year sentence on the former charge and a twenty-five year concurrent sentence on the latter charge. Id. The defendant argued that he could not be sentenced for both offenses since they were the same offense and claimed that five years should be

that the defendant's rights under the double jeopardy clause had been violated, we remanded the case to the trial court with direction to vacate the judgment of conviction on the manslaughter charge. Id., 697. The defendant in *John,* however, had requested that we vacate the manslaughter conviction. Consequently, we did not have to address the issue, at that time, of how to determine which conviction should be eliminated.

remitted from his concurrent sentence. Id., 305. In rejecting the defendant's claim that he should have to serve only the twenty year sentence, the court stated that "[a]lthough petitioner is technically correct that sentences should not have been imposed on both counts, the remedy which he seeks does not follow. This is not a case where sentence was passed on two counts stating alternative means of committing one offense; rather, the third count involved additional characteristics which made the offense an aggravated one— namely, putting persons in jeopardy of life by use of a dangerous weapon. Plainly enough, *the intention of the district judge* was to impose the maximum sentence of twenty-five years for aggravated bank robbery, and the formal defect in his procedure should not vitiate his considered judgment." (Emphasis added.) Id., 306.

*Green* v. *United States,* supra, indicates that when deciding which of two sentences to vacate when both cannot stand, the determinative factor is the intention of the sentencing judge. *Thomas* v. *Morris,* 844 F.2d 1337, 1344–45 (8th Cir. 1988) (Bowman, J., dissenting), rev'd sub nom. *Jones* v. *Thomas,* 491 U.S. 376, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989); *Sawyer* v. *United States,* 312 F.2d 24, 27 (8th Cir.), cert. denied, 374 U.S. 837, 83 S. Ct. 1888, 10 L. Ed. 2d 1058 (1963); see *United States* v. *Corson,* 449 F.2d 544, 547 n.5 (3d Cir. 1971).

Although the double jeopardy clause was not the basis for the defendant's claim in *Green,*[14] the United States Supreme Court recently adopted an approach analogous to that of the *Green* court in determining which of two convictions must be eliminated when a defendant is convicted under two criminal statutes that pun-

[14] In *Holiday* v. *Johnston,* 313 U.S. 342, 349, 61 S. Ct. 1015, 85 L. Ed. 1392 (1941), the court had held that a defendant could not receive two sentences for the same offense under the Bank Robbery Act but that this error did not constitute double jeopardy. The court concluded that the appropriate remedy for this error was for the defendant to apply for vacation of the sentence and resentencing in conformity with the statute. Id.

ish the same conduct. See *Ball* v. *United States,* 470 U.S. 856, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985). In *Ball* the court applied the *Blockburger* test as a rule of statutory construction and held that the defendant could not be punished under both 18 U.S.C. § 922 (h) (1) (receipt of a firearm by a convicted felon) and 18 U.S.C. App. § 1202 (a) (1) (possession of a firearm by a convicted felon) because the crimes constitute the same offense. *Ball* v. *United States,* supra, 862–64. The court stated that "the only remedy consistent with the congressional intent is for the district court, *where the sentencing responsibility resides,* to exercise its discretion to vacate one of the underlying convictions." (Emphasis added.) Id., 864. *Ball* established that the decision of which conviction to negate is a question controlled by the intention of the sentencing court.[15]

In this case, the intention of the three judge panel that convicted the defendant is clear. The panel sentenced the defendant to three consecutive terms of sixty years on the felony murder convictions while it sentenced him to three consecutive twenty year terms on the manslaughter convictions to run concurrently with the felony murder sentences. The sentences and the manner in which they were imposed clearly indicate that the panel intended that the sentences for the felony murder convictions control. There is, therefore, no need for the trial court to exercise again its sentencing discretion.[16]

---

[15] Although the *Ball* court left the decision of which of the two convictions to vacate to the trial court, at least three United States Circuit Courts of Appeal applying *Ball* in cases involving greater and lesser included offenses have directed the trial court to eliminate the conviction for the lesser offense. See *United States* v. *Hernandez-Escarsega,* 886 F.2d 1560, 1582 (9th Cir. 1989), cert. denied,     U.S.     , 110 S. Ct. 3237, 111 L. Ed. 2d 748 (1990); *United States* v. *Maull,* 806 F.2d 1340, 1347 (8th Cir. 1986), cert. denied, 480 U.S. 907, 107 S. Ct. 1352, 94 L. Ed. 2d 522 (1987); *United States* v. *Aiello,* 771 F.2d 621, 632–35 (2d Cir. 1985).

[16] In cases where the intention of the sentencing court as to which sentence should control is not as clear as it is in this case, our remand could

The foregoing analysis does not address the defendant's principal claim concerning why we should eliminate the felony murder convictions rather than the manslaughter convictions. The defendant argues that the felony murder convictions should be negated because his manslaughter convictions, unlike the manslaughter conviction in *State* v. *John,* supra, were based on the finding that he acted under the influence of extreme emotional disturbance. He claims that if we negate his manslaughter convictions and leave his felony murder convictions intact, we would deprive him of the affirmative defense of extreme emotional disturbance to which he claims to be entitled under the circumstances of this case. The defendant does not go so far as to argue that extreme emotional disturbance would be a defense if the state had charged him with only felony murder. He asserts rather that once it has been determined that the death of a single victim can be the basis for only one homicide conviction, the conviction for which mitigating circumstances have been found must be the conviction left intact. The state, in refutation of this claim, relies upon the absence of any reference in § 53a-54c to extreme emotional disturbance as a defense to felony murder and upon the legislative history of the statute.

The defendant's argument is inextricably linked to his dual convictions for felony murder under § 53a-54c and manslaughter in the first degree under § 53a-55 (a) (2). He contends that he cannot be sentenced for felony murder because the three judge panel found that the existence of extreme emotional disturbance provided a defense to the intentional murder counts of the information. The premise of the defendant's argument is that when two homicide convictions are deemed to

order the sentencing court to decide which conviction to negate. Requiring the three judge panel to complete this additional step is unnecessary in this case since the panel's intent is clear.

be the same offense for double jeopardy purposes, a statutory defense to one of the crimes must necessarily be a defense to the other. We disagree.

In *State* v. *Ellis,* 197 Conn. 436, 471–72, 497 A.2d 974 (1985), we stated that "it serves little purpose to characterize 'offenses' as 'different' or the 'same' without the purpose of the comparison as a point of reference. That two offenses may be the 'same' for purposes of double jeopardy does not mean that they are the same for purposes of the statute of limitations, or res judicata, or for any other purpose. It means only that they are the 'same' for purposes of double jeopardy, which in turn, is a concise way of saying that the legislature did not intend that cumulative punishments be imposed under separate statutory sections . . . . This single point of similarity, while of inestimable importance in our scheme of individual liberties, does not make two offenses the same for all other purposes." (Citations omitted.)

Our holding in *John* determined that the legislature did not intend that a defendant be punished for both felony murder and manslaughter in the first degree when his dual convictions arose from a single homicide. The double jeopardy analysis in *John,* however, does not dictate which of the two convictions should be vacated, that for felony murder, or that for manslaughter. If we were to hold that a court, when determining which of two convictions for the same homicide should be set aside, must give effect to an affirmative defense that applies to only one of the two convictions, we would be extending double jeopardy analysis beyond its proper bounds.

The express provisions of the intentional murder, manslaughter in the first degree, and felony murder statutes clearly demonstrate that the legislature did not intend that extreme emotional disturbance be an

affirmative defense if the *sole* crime with which a defendant is charged is felony murder. " '[I]n the absence of ambiguity, courts cannot read into statutes, by construction, provisions which are not clearly stated; *Point O' Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979) . . . .' " *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984). Section 53a-54a (a), which states that extreme emotional disturbance is an affirmative defense to the crime of intentional murder, provides that "nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or *any other crime."* (Emphasis added.) Section 53a-55 (a) (2) establishes that an intentional murder committed under the influence of extreme emotional disturbance constitutes manslaughter in the first degree rather than murder. The felony murder statute, § 53a-54c, expressly lists the elements of the sole affirmative defense to that crime.[17] Extreme emotional disturbance is not that defense and we can only deduce that the legislature did not intend it to be; otherwise, it could easily have so provided. See *Caulkins* v. *Petrillo,* 200 Conn. 713, 719, 513 A.2d 43 (1986).

Our conclusion that extreme emotional disturbance does not mitigate a single felony murder charge is not dispositive because the defendant, as stated earlier, does not make that claim. Rather, in arguing that we

---

[17] General Statutes § 53a-54c provides in pertinent part: "[I]t shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

must give effect to the defense of extreme emotional disturbance, he asserts that the legislative history of the murder statutes suggests that the legislature did not intend that felony murder be charged in cases where the state could prove the intent to cause death. The defendant claims that when felony murder is charged under those circumstances, the affirmative defense of extreme emotional disturbance applies to both the felony murder and intentional murder counts. Because we do not agree with the defendant's interpretation of the legislative history, we cannot agree with his conclusion that the legislature intended that extreme emotional disturbance mitigate felony murder when a defendant is charged with both intentional and felony murder.

"The legislative history of the felony murder statute, § 53a-54c, indicates that its purpose was to fill an omission in the statutory definition of murder in § 53a-54a. In restoring the concept of felony murder, which had been omitted from the original enactment of the penal code, the legislature intended to specify another manner in which the crime of murder could be committed, rather than create a new crime. Such a purpose would have been in keeping with this state's murder statute prior to the enactment of the penal code, when the felony murder principle was simply included in the statutory definition of first degree murder. General Statutes § 53-9." *State* v. *John,* supra, 696.

The defendant's claim that the legislature intended the use of the felony murder statute *only* for cases where the state lacked proof of intent to cause death is without support. The legislative history indicates that the primary concern leading to the reenactment of the felony murder statute was that its omission was forcing prosecutors to accept manslaughter convictions, in cases where they would previously have obtained felony

murder convictions, because they could not prove the intent to cause death required under the existing murder statute. 17 H.R. Proc., Pt. 6, 1974 Sess., pp. 3218–19, 3221–22; Conn. Joint Standing Committee Hearings, Judiciary, 1974 Sess., pp. 236–37. The legislative history also reveals that § 53a-54c was designed to *restore* the concept of felony murder that was included in the statutory definition of murder before the penal code was adopted. 17 H.R. Proc., Pt. 6, 1974 Sess., pp. 3218–19, 3221–22; Conn. Joint Standing Committee Hearings, Judiciary, 1974 Sess., pp. 236–37; *State* v. *John,* supra, 696. The importance of the legislative purpose of restoring the concept of felony murder lies in the fact that this court, in construing the murder statute in effect prior to the enactment of the penal code, had held that a defendant could be charged with both intentional murder and felony murder for a single homicide because these crimes represented alternative methods of committing the crime of murder. *State* v. *Cofone,* 164 Conn. 162, 166, 319 A.2d 381 (1972); *State* v. *Edwards,* 163 Conn. 527, 532, 316 A.2d 387 (1972). Since the legislature is presumed to know the history of a statute as judicially construed; *Peck* v. *Jacquemin,* 196 Conn. 53, 72, 491 A.2d 1043 (1985); *Lukas* v. *New Haven,* 184 Conn. 205, 213, 439 A.2d 949 (1981); the defendant's claim that the legislature intended the felony murder statute to be used only in cases where the state lacked proof of intent to cause death cannot withstand scrutiny.

The defendant also argues that if we reject his claim that the legislative history of the felony murder statute requires us to give effect to the defense of extreme emotional disturbance to the felony murder counts, we should then find that the legislative intent on this issue is at least unclear and apply the "fundamental tenet of our law to resolve doubts in the enforcement of a

penal code against the imposition of a harsher punishment." *State* v. *Rawls,* 198 Conn. 111, 121, 502 A.2d 374 (1985). "This policy of lenity means that the Court will not interpret a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner* v. *United States,* 358 U.S. 169, 178, 79 S. Ct. 209, 3 L. Ed. 2d 199 (1958).

"The 'touchstone' of this rule of lenity is 'statutory ambiguity.' *Bifulco* v. *United States,* 447 U.S. 381, 387, 100 S. Ct. 2247, 65 L. Ed. 2d 205 (1980)." *State* v. *Rawls,* supra, 122. The problem with the defendant's invocation of this rule is that he assumes that the question of which conviction should survive, felony murder or manslaughter, involves a standard question of legislative intent. Because the legislature did not intend a defendant to be punished for both felony murder and manslaughter in the first degree for a single homicide, it certainly could not have considered or exhibited any intent concerning which conviction should be nullified if a defendant was convicted of both crimes. It is therefore anomalous to speak of "statutory ambiguity" with respect to an issue that the legislature logically could not have considered.

A distinction must be drawn between the role played by legislative intent in deciding two different issues: (1) whether a defendant has been subjected to multiple punishments for the same offense in the context of a single trial in violation of the double jeopardy clause; and, if so, (2) which punishment should be set aside. With respect to the first issue, an examination of the legislative intent is necessary in order to avert multiple punishments for the same crime and thereby "prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri*

v. *Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). On the other hand, determining which conviction should be set aside when a defendant is convicted of multiple crimes for the same offense is not truly a question of legislative intent, but is rather a decision requiring the exercise of the sentencing court's discretion. *Ball* v. *United States,* supra, 864. The question of which conviction should be set aside does not involve the type of statutory construction problem to which the rule of lenity applies because there is no issue of legislative intent and ultimately there will be imposed but a single legislatively prescribed punishment. Compare *State* v. *Rawls,* supra, 121–22 (rule of lenity applied to question of whether legislature intended multiple punishments under a single narcotics statute for simultaneous possession of heroin and cocaine). The defendant is unable to cite any cases in which the rule of lenity has been applied in this context, and we decline to apply it in this instance.

Here the state proved the elements of felony murder and the three judge panel ordered the defendant to serve an effective sentence of 180 years for the three felony murder convictions, with all other sentences to run concurrently thereto. By imposing the defendant's sentences in the manner in which it did, the panel obviously intended the sentences for felony murder to be the controlling punishment. We conclude, therefore, that the felony murder convictions should stand and that the convictions for manslaughter in the first degree should be nullified.

## C

We must now determine the proper procedural form for our remand.[18] In the past, in cases where we have

---

[18] Although this issue was not briefed by the parties, it was raised by the defendant's request in his brief that we "merge" the felony murder convictions into the manslaughter convictions and vacate the felony mur-

concluded that multiple punishments had been imposed for the same offense, we have set aside the judgment of conviction for one of the offenses, thereby vacating *both* the conviction and the sentence for that offense. *State* v. *John,* supra, 697; *State* v. *Rawls,* supra, 122; *State* v. *Amaral,* 179 Conn. 239, 245, 425 A.2d 1293 (1979); *State* v. *Goldson,* 178 Conn. 422, 427, 423 A.2d 114 (1979).

The form of remand requested by the state, which would vacate only the sentence, is similar to the form adopted by the United States Court of Appeals for the Second Circuit in *United States* v. *Osorio Estrada,* 751 F.2d 128, 133–35 (2d Cir. 1984), cert. denied, 474 U.S. 830, 106 S. Ct. 97, 88 L. Ed. 2d 79 (1985). The defendant in *Osorio Estrada* had been convicted of two counts of conspiracy and one count of conducting a continuing criminal enterprise, and the trial judge imposed concurrent sentences for all three convictions. Id., 133–34. Noting that "[t]he law in this Circuit is that a conviction on a lesser included offense may not stand as a separate conviction," the court concluded that the trial court had erred in sentencing the defendant for the two conspiracy convictions since these charges were found to be lesser included offenses of the continuing criminal enterprise charge. Id., 134.

Addressing the issue of whether it was required to vacate both the conviction and the sentence or only the

der sentences. The procedural format of this request is consistent with the procedure followed by the Second Circuit Court of Appeals; see *United States* v. *Roman,* 870 F.2d 65, 75–76 (2d Cir.), cert. denied, 490 U.S. 1109, 109 S. Ct. 3164, 104 L. Ed. 2d 1026 (1989); *United States* v. *Aiello,* 771 F.2d 621, 632–33 (2d Cir. 1985); but it is not consistent with the procedure followed by this court in prior cases involving successful double jeopardy claims. See, e.g., *State* v. *Rawls,* 198 Conn. 111, 122, 502 A.2d 374 (1985). During oral argument the state indicated that it had assumed that we would continue to follow the procedure of ordering the trial court to vacate both the conviction and the sentence, but it urged this court to adopt the procedure followed by the Second Circuit if we reached this issue.

sentence, the court reviewed the concerns underlying these alternative approaches. "The rationale for vacating a conviction as well as the sentence is that a conviction alone—even without a sentence—may entail adverse 'collateral consequences.' " Id. These consequences include the risk that the existence of multiple convictions may harm the defendant in obtaining parole or employment or in testifying as a witness. *United States* v. *Hooper*, 432 F.2d 604, 605 n.3 (D.C. Cir. 1970); *State* v. *John*, supra, 694. The argument for vacating only the sentence is that if the conviction on the lesser offense is vacated, the defendant might be able to escape all criminal liability if an appellate court later reversed the conviction on the greater offense but would have upheld the conviction for the lesser offense. *United States* v. *Osorio Estrada*, supra, 134. The *Osorio Estrada* court concluded that the defendant's "convictions on the lesser offenses should be combined with the conviction on the greater offense, i.e., the [continuing criminal enterprise] count. . . .

"Under this method, the convictions on the lesser counts become combined with that on the compound offense and would *not* be merged out of existence. This leaves the part of the conviction on the lesser offense unaffected should the compound offense be invalidated as a matter of law. The convictions on the lesser offenses would not exist as separate convictions so long as the [continuing criminal enterprise] conviction remained in place. Thus, the risk of any collateral consequences that separate convictions may entail would be eliminated . . . ." (Emphasis in original.) Id., 135.

In *United States* v. *Aiello,* supra, the Second Circuit Court of Appeals addressed the issue of whether its decision in *Osorio Estrada* was consistent with *Ball* v. *United States,* supra. In *Ball,* the court had ordered the district court to "*vacate* one of the underlying convic-

tions" because a defendant had suffered multiple punishments for a single offense. (Emphasis added.) *Ball* v. *United States,* supra, 864. In *Aiello,* the Second Circuit concluded that *Ball* was not inconsistent with the procedure adopted in *Osorio Estrada* because *Ball* did not address the specific concern discussed in *Osorio Estrada,* namely, the effect of a subsequent reversal of the conviction left intact. *United States* v. *Aiello,* supra, 633. The court reasoned that "[t]he Supreme Court's objective in *Ball,* to avoid the punitive consequences that might follow from having dual convictions on a defendant's record, is achieved by the procedure adopted by us in *Osorio Estrada* of 'combining' convictions to 'eliminate' the 'risk of any collateral consequences that separate convictions may entail.' " Id., quoting *United States* v. *Osorio Estrada,* supra, 135.[19]

In *State* v. *Napoleon,* 12 Conn. App. 274, 277–83, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78

---

[19] A majority of the circuits follow the procedure of vacating both the conviction and the sentence on the lesser offense. See *United States* v. *Possick,* 849 F.2d 332, 341 (8th Cir. 1988); *United States* v. *Stallings,* 810 F.2d 973, 975–76 (10th Cir. 1987); *United States* v. *Schuster,* 769 F.2d 337, 343–45 (6th Cir. 1985), cert. denied, 475 U.S. 1021, 106 S. Ct. 1210, 89 L. Ed. 2d 322 (1986); *United States* v. *Bascaro,* 742 F.2d 1335, 1357–58 (11th Cir. 1984), cert. denied sub nom. *Hobson* v. *United States,* 472 U.S. 1017, 105 S. Ct. 3476, 87 L. Ed. 2d 613 (1985); *United States* v. *Oberski,* 734 F.2d 1030, 1032 (5th Cir. 1984), cert. denied, 469 U.S. 1113, 105 S. Ct. 797, 83 L. Ed. 2d 790 (1985); *United States* v. *Smith,* 703 F.2d 627, 628 (D.C. Cir. 1983) (per curiam).

The procedure of vacating only the sentence has found support in at least three circuits other than the Second Circuit. See *United States* v. *Moya-Gomez,* 860 F.2d 706, 752–54 (7th Cir. 1988), cert. denied sub nom. *Estevez* v. *United States,* 492 U.S. 908, 109 S. Ct. 3221, 106 L. Ed. 2d 571 (1989); *United States* v. *Grayson,* 795 F.2d 278, 287 (3d Cir. 1986), cert. denied sub nom. *Robinson* v. *United States,* 479 U.S. 1054, 107 S. Ct. 927, 93 L. Ed. 2d 978 (1987); *United States* v. *Burt,* 765 F.2d 1364, 1368 (9th Cir. 1985); see also *United States* v. *Fuentes,* 729 F. Sup. 487, 492–93 (E.D. Va. 1989) (noting conflict within the Fourth Circuit on this issue and vacating only the sentence).

(1987), the Appellate Court refused to adopt the remand procedure outlined in *Osorio Estrada.* In reaching this conclusion the *Napoleon* court relied largely on the uniform precedents of this court vacating both the conviction and the sentence. Id., 282. The Appellate Court also concluded that *Ball* v. *United States,* supra, requires the vacation of both the conviction and the sentence. We disagree with the Appellate Court concerning the effect of *Ball* because we find the reasoning of the Second Circuit in *United States* v. *Aiello,* supra, 633–34, to be persuasive.

We conclude that the Second Circuit's approach to this procedural issue adequately addresses the dual concerns relating to a subsequent reversal of the remaining conviction and subjecting a defendant to the collateral consequences of multiple convictions. Therefore, the proper disposition of this case is to combine the convictions for manslaughter in the first degree with the felony murder convictions and vacate the manslaughter sentences. If the felony murder convictions are later invalidated for any reason and the defect at issue does not affect the convictions for manslaughter in the first degree, the manslaughter convictions would be resuscitated and the defendant could be punished for those convictions.

## II

The defendant's second double jeopardy claim arises from his convictions for both manslaughter in the first degree and injury to a child. We conclude that this issue is moot because of our disposition of his first double jeopardy claim. The defendant argues that this question would not be moot unless we were to order a judgment of acquittal on the manslaughter convictions. We have held that a finding that a defendant has been given multiple punishments for the same offense in a single trial cannot support a motion for acquittal. *State* v.

*Usry,* 205 Conn. 298, 318, 533 A.2d 212 (1987). The defendant argues that, absent a judgment of acquittal, the mere existence of the manslaughter convictions along with the injury to a child conviction raises a double jeopardy problem even though the punishment related to the manslaughter convictions, including any potential collateral consequences, has been eliminated. We disagree.

In the context of a single trial, "the role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple *punishments* for the same offense." (Emphasis added.) *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). In *United States* v. *Osorio Estrada,* supra, 134–35, and *United States* v. *Aiello,* supra, 633–34, the Second Circuit concluded that the mere existence of a conviction, without any related sentence or collateral consequences, does not pose any double jeopardy problems, since there is no punishment associated with the conviction. The trigger for double jeopardy analysis in the context of a single trial is multiple punishment; where there is no punishment associated with a conviction there is no double jeopardy.

In light of our disposition of the defendant's first double jeopardy claim, it is necessary to determine whether the existence of the convictions for both felony murder and injury to a child poses any double jeopardy problems. There is no dispute that these convictions arose from the same act. Felony murder and injury to a child, however, do not constitute the same offense under the *Blockburger* test because each offense requires proof of a fact that the other does not. Under § 53a-54c, felony murder requires proof of a predicate felony, but does not require proof that the victim was a child. Under § 53-21, injury to a child requires proof

that the endangered child was under the age of sixteen years, but does not require proof of a predicate felony.

If each of two offenses requires proof of a fact that the other does not, the *Blockburger* test gives rise to the presumption that the legislature intended multiple punishment for the offenses. *State* v. *Delgado,* 19 Conn. App. 245, 251–52, 562 A.2d 539 (1989). That presumption is rebutted only by a clear indication of a contrary legislative intent. *Garrett* v. *United States,* 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985). In this instance there is no clear legislative intent evident from either the wording of the statutes or their legislative histories that the legislature did not intend multiple punishments for the distinct crimes of felony murder and injury to a child. Consequently, the *Blockburger* presumption is not rebutted.

The judgment is reversed in part and the case is remanded to the trial court with direction to combine the defendant's manslaughter convictions with his three felony murder convictions and to vacate his manslaughter sentences. The judgment of the trial court is not otherwise modified. The defendant's consecutive sentences for felony murder remain the effective term of imprisonment.

In this opinion the other justices concurred.