## STATE OF CONNECTICUT *v.* CHARLES D. TYSON III
## (15283)

Foti, Landau and Spear, Js.

Argued May 1—officially released September 10, 1996

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Clark*, senior assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder, in violation of General Statutes § 53a-54a, felony murder in violation of General Statutes § 53a-54c, attempted robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134, and assault of a peace officer in violation of General Statutes § 53a-167c. The defendant claims that the trial court improperly instructed the jury on consciousness of guilt and on various other matters including, credibility, reasonable doubt, presumption of innocence, identity and punishment. The defendant also alleges that the trial court improperly sentenced him for both murder and felony murder, and may have abused its discretion in its review, in camera, of certain subpoenaed police personnel records. We agree that the trial court, after properly merging the intentional murder and felony murder convictions, improperly imposed concurrent sentences for both, and, therefore, remand this matter with direction.

The jury reasonably could have found the following facts. On October 24, 1991, at approximately 10:30 p.m., Stanley Greiman drove into a parking garage on George Street in New Haven, which was adjacent to the apartment complex where he resided. After parking his vehicle, Greiman walked to the intersection of Park Street and Frontage Road to examine a motor vehicle accident that he had noticed upon entering the parking garage. Greiman subsequently walked back through the garage toward the entrance to his apartment complex. Once in the garage, Greiman heard the noise of metal hitting the pavement.[2] Looking into an adjacent parking lot that is separated from the garage by a fence, Greiman saw a person swinging an object at something or some-

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] Greiman testified that the noise sounded like a tire iron hitting the pavement.

one moving on the ground. Greiman immediately left the garage to find a police officer from the accident scene to report his observations. Outside the Park Street entrance to the parking garage, Greiman encountered Detective Winkler Christensen of the New Haven police department[3] and Donald Rossberg, a building superintendent from a nearby apartment complex, and informed them of the disturbance in the parking lot.

Standing at the Park Street garage entrance, Christensen looked in the direction of the parking lot and saw a male wearing a red shirt swinging an object at somebody moving on the ground. Rossberg, from the same position, observed a person wearing a green and grey jacket and a red or orange shirt hitting another individual with an object. Both Christensen and Rossberg quickly approached the area where the assault was taking place.

Approximately ten feet before they reached the driveway to the parking lot, Christensen observed the defendant, Charles Tyson, walk out of the parking lot onto the sidewalk. Christensen observed that the defendant was wearing a red shirt and sweating profusely. Rossberg observed that the defendant's clothing was similar to that of the assailant and that the defendant was approaching them with one hand behind his back.

As Rossberg continued past the defendant, Christensen displayed his detective's badge and asked the defendant if they could talk. The defendant advanced toward Christensen, pulled out a pipe that he had been holding behind his back and attacked Christensen, aiming the pipe at Christensen's head. Christensen avoided

---

[3] On the evening of October 24, 1991, Christensen was working in plain clothes as an extra duty officer, providing security to four high-rise buildings at the New Haven Towers Association and the surrounding grounds. This is a two block area located between Park and High Streets in New Haven.

the assault to his head, but suffered a blow to his back, causing him to fall facedown to the ground. Christensen rolled over and observed the defendant move toward him. Christensen reached for his weapon, and the defendant dropped the pipe and fled. Christensen picked up the pipe and pursued the defendant. A Yale University police officer apprehended the defendant.

Christensen, accompanied by a Yale University police officer, later returned to the parking lot where the initial assault had occurred. At the scene, they discovered the victim, James Tyson,[4] lying on the ground with his back against the fence. The victim was unable to communicate and was bleeding profusely from the top of his head. He had sustained massive head injuries and was transported by ambulance to Yale-New Haven Hospital. On November 7, 1991, the victim died from injuries produced by blows to the head.

Forensic testing performed on the pipe used in the attack on Christensen and the defendant's clothing revealed the presence of human blood of the same type as that of the victim.

I

The defendant first claims that the trial court improperly instructed the jury on consciousness of guilt.[5] The

---

[4] The victim, James Tyson, and the defendant, Charles Tyson, apparently are not related.

[5] The court instructed: "Now, the law of our state recognizes a principle known as admission by conduct. Certain conduct of a person may be considered by you to show a guilty knowledge or consciousness of guilt. When a person is on trial for a criminal offense it is proper to show his conduct subsequent to the alleged criminal offense or offenses which may fairly have been influenced by the actions. Flight when unexplained can indicate consciousness of guilt if the facts and circumstances support it. The state claims that the defendant first attacked and then fled from Detective Christensen immediately after the commission of the crime charged in counts one, two and three. If you find that the defendant did flee the police or otherwise tried to evade them following the commission of the crimes alleged, you may find that such actions tend to show a guilty connection

defendant's claim is unpreserved and he seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), or under the plain error doctrine. Practice Book § 4185.[6]

Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 213 Conn. 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992); see also *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

The defendant's claim is not of constitutional magnitude alleging the violation of a fundamental right. Although the defendant claims that the charge allowed the jury to use *constitutionally protected conduct, other*

---

with the crimes charged in the first three counts. In other words, any actions of the defendant subsequent to the criminal actions alleged which you find show a guilty knowledge influenced by the criminal action itself may be used by you as circumstantial evidence of the defendant's guilt. That is, if you find that the defendant's actions or flight show consciousness of guilt you may use that conclusion as independent evidence of guilt along with the other facts of the case to determine whether he has been proven guilty of the crimes charged."

[6] We need not consider a claim on appeal unless it was directly raised at the trial or arose subsequent to the trial. Practice Book § 4185. "This court reviews rulings solely on the ground on which the party's objection is based." *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971); *State* v. *Busque,* 31 Conn. App. 120, 127, 623 A.2d 532 (1993), appeal dismissed, 229 Conn. 839, 643 A.2d 1281 (1994).

than flight, to find him guilty, such as failure of the defendant to give a postarrest statement to the police, our review of the court's entire instruction shows otherwise. It is clear that the court, when referring to the defendant's "actions or flight," was relating that to the earlier statement regarding the state's claim that the defendant "first attacked and then fled."

Evidence of flight may be used to infer consciousness of guilt. *State* v. *Freeney*, 228 Conn. 582, 593–94, 637 A.2d 1088 (1994). "The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." *State* v. *Nemeth*, 182 Conn. 403, 408, 438 A.2d 120 (1980). Because the defendant's flight was not constitutionally protected conduct, his claim amounts to an unpreserved nonconstitutional one which does "not warrant special consideration simply because [it] bear[s] a constitutional label." *State* v. *Golding*, supra, 213 Conn. 240. Since the defendant has failed to demonstrate that his claim is of constitutional magnitude alleging the violation of a fundamental right, we decline to review it.

Plain error review "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *King*, 216 Conn. 585, 591, 583 A.2d 896 (1990). The claimed error here is not so egregious or obvious as to merit such review." (Internal quotation marks omitted.) *State* v. *Sawyer*, 32 Conn. App. 854, 856–57, 632 A.2d 372, cert. denied, 228 Conn. 911, 635 A.2d 1230 (1993). The instructions read as a whole did not result in an "unreliable verdict or miscarriage of justice. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Harvey*, 27 Conn. App. 171, 187, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). Plain error review is not warranted.

## II

The defendant next alleges that the trial court improperly instructed in various portions of its charge to the jury, thereby diluting the presumption of innocence, and also related to the jury the court's impression that the defendant was guilty.[7]

Our review of the charge as a whole leads us to conclude that the claim is without merit in its entirety. The trial court's charge was fair, evenhanded and proper. Patently nonconstitutional claims, unpreserved at trial, should not be considered merely because they are tagged with a constitutional label, and should be summarily dismissed. *State* v. *Tillman*, 220 Conn. 487, 505, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). The defendant challenges the court's instruction that "the law is made to protect society and innocent persons and not to protect guilty ones." Identical or substantially similar language has been recently upheld by our appellate courts. *State* v. *Ellis*, 232 Conn. 691, 705–706, 657 A.2d 1099 (1995); *State* v. *Walton*, 227 Conn. 32, 66–67, 630 A.2d 990 (1993); *State* v. *Tucker*, 226 Conn. 618, 651–52, 629 A.2d 1067 (1993); *State* v. *Zollo*, 36 Conn. App. 718, 735, 654 A.2d 359 (1995).

The defendant also claims as improper the court's instruction that "the jury should not concern itself with the punishment to be meted out in the event of a conviction." This language also does not raise an issue of constitutional dimension, and even if we consider it to have raised such an issue, there was no possibility that the jury was misled, taking the instructions as a whole. See *State* v. *Francis*, 228 Conn. 118, 135, 635 A.2d 762 (1993); *State* v. *Colon*, 37 Conn. App. 635, 639, 657 A.2d 762, cert. denied, 234 Conn. 917, 660 A.2d 354 (1993);

---

[7] Only one of the defendant's specific claims of instructional impropriety was preserved for appellate review.

*State* v. *McFadden*, 25 Conn. App. 171, 176–77, 593 A.2d 979, cert. denied, 220 Conn. 906, 593 A.2d 971 (1991). The defendant argues that the court improperly instructed the jury that "the state does not want the conviction of innocent persons." We do not agree. See *State* v. *Allen*, 28 Conn. App. 81, 84, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992).

The defendant also alleges as an unpreserved claim that the trial court's instruction to the jury was improper in that it failed to charge that the state's burden was to prove the identity of the defendant as the perpetrator of the crime beyond a reasonable doubt. "It is axiomatic that a jury must find that the defendant on trial before it was the person who committed the alleged offense in order to render a verdict of guilty." *State* v. *Smith*, 7 Conn. App. 715, 718, 510 A.2d 219, cert. denied, 201 Conn. 804, 513 A.2d 699 (1986). In *State* v. *Walker*, 9 Conn. App. 373, 376–77, 519 A.2d 83 (1986), cert. denied, 202 Conn. 805, 520 A.2d 1286 (1987), we noted that "[t]he court . . . properly instructed the jury that each essential element, including identity, had to be proved by the state beyond a reasonable doubt. A review of the charge as a whole leads us to the conclusion that it is not reasonably possible that the jury was misled as to the state's burden of proof."

Our review of the complete jury instructions in this case also leads us to conclude that it is not reasonably possible that the jury was misled as to the necessity of determining the identity of the perpetrator beyond a reasonable doubt. The trial court more than adequately gave detailed instructions on the issue of identity. A jury instruction conforms with constitutional requirements if it provides jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. *State* v. *Avila*, 223 Conn. 595, 602, 613 A.2d 731 (1992). We conclude, therefore,

that none of the unpreserved claims dealing with the various challenged instructions amounts to a constitutional violation that clearly deprived the defendant of a fair trial.

The defendant's final claim of instructional error, for which he noted an exception, is the trial court's instruction to the jury for assessing the defendant's credibility as a witness. The court instructed: "As you know, an accused person is not obliged to take the witness stand in his own behalf. On the other hand, he has a perfect right to do so as the defendant, Mr. Tyson, has done in this case. In weighing the testimony that the defendant has given you, you should apply the same principles by which the testimony of other witnesses are tested and that necessarily involves a consideration of his interest in the case. You will consider the importance to him of the outcome of this trial. An accused person having taken the witness stand stands before you just like any other witness and is entitled to the same consideration and must have his testimony measured in the same way as any other witness."

Our Supreme Court has repeatedly approved the identical or substantially similar language. *State* v. *Williams*, 220 Conn. 385, 397, 599 A.2d 1053 (1991); *State* v. *Mack*, 197 Conn. 629, 637, 500 A.2d 1303 (1985); *State* v. *Avcollie*, 188 Conn. 626, 637, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983). We are bound by these decisions. *State* v. *Reis*, 33 Conn. App. 521, 527, 636 A.2d 872, cert. denied, 229 Conn. 901, 640 A.2d 118 (1994).

### III

The state concedes, and we agree, that after properly merging the intentional murder and the felony murder convictions, the trial court improperly imposed concurrent sixty year terms of imprisonment on each conviction. Sentencing on multiple convictions for a single

homicide under the felony murder statute and any other homicide statute constitutes double jeopardy. *State* v. *Chicano*, 216 Conn. 699, 710, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); *State* v. *Miller*, 36 Conn. App. 506, 516, 651 A.2d 1318, cert. denied, 232 Conn. 912, 454 A.2d 357 (1995).

We must remand this matter with direction to combine the defendant's convictions for felony murder and intentional murder and to vacate one of the sentences. The total effective sentence will remain the same by combining these sentences. *State* v. *Chicano*, supra, 216 Conn. 721–25.

IV

The defendant posits that the trial court may have abused its discretion in its in camera review of the personnel records of Christensen. The records were subpoenaed by the defense, delivered to the court, sealed and marked as an exhibit. After conducting an in camera review of this and three other such exhibits, the court denied the defendant access and stated, inter alia: "There's nothing which I have found which needs to be turned over for impeachment purposes so [this file] will remain sealed pending either some unforeseen developments at trial or appellate review if necessary." In order to determine whether the court's action in denying access of Christensen's personnel record to the defendant constituted an abuse of discretion, we have conducted our own in camera inspection of the sealed exhibit. We conclude that the trial court did not abuse its discretion in denying the defendant access to the privileged material.

The judgment is reversed in part and the case is remanded with direction to combine the defendant's murder conviction with his felony murder conviction and to vacate the sentence for one of those convictions.

In this opinion the other judges concurred.