## STATE OF CONNECTICUT *v.* FRANK X. LoSACCO (4907)

BORDEN, BIELUCH and SCHALLER, Js.

Argued May 5—decision released August 25, 1987

*Frank X. LoSacco,* pro se, the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom, on the brief, were *Michael Dannehy,* assistant state's attorney, and *Linda L. Yoder,* special attorney, for the appellee (state).

SCHALLER, J. After a jury trial, the defendant was convicted of criminal trespass in the first degree in violation of General Statutes § 53a-107.[1] The defendant, who represented himself at trial, has appealed pro se claiming that the trial court erred (1) in submitting the matter to the jury when the evidence was insufficient to establish his guilt beyond a reasonable doubt, (2) in charging the jury improperly, as well as in refusing to charge as requested, and (3) in submitting the matter to the jury when public policy and the habits of the country imply a license or privilege to enter a building lobby. Because we find merit to the defendant's first claim of error, we need not consider the remaining claims.

At the close of the state's case, the defendant moved for a judgment of acquittal and a new trial. These motions were subsequently denied by the trial court after the jury rendered its verdict. In the interval, the

---

[1] "[General Statutes] Sec. 53a-107. CRIMINAL TRESPASS IN THE FIRST DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person; or (2) such person enters or remains in a building or any other premises in violation of a restraining order issued by the superior court."

defendant proceeded to introduce his own evidence. In doing so, the defendant waived review of the sufficiency of the state's case. We must, therefore, consider his challenge to the sufficiency of evidence based upon the evidence in toto. See *State* v. *Simino*, 200 Conn. 113, 118, 509 A.2d 1039 (1986); *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1983).

When we review the sufficiency of the evidence, we are limited to inquiring " ' "whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' " *State* v. *Rutan*, supra, 444, quoting *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). On review, we do not reweigh the evidence or judge the credibility of witnesses. *State* v. *Banks*, 194 Conn. 617, 619, 484 A.2d 444 (1984). The evidence presented at trial must be construed in the light most favorable to sustaining the verdict. *State* v. *Little*, 194 Conn. 665, 673, 485 A.2d 913 (1984); *State* v. *Scielzo*, 190 Conn. 191, 196, 460 A.2d 951 (1983). The jury has the right to draw reasonable and logical inferences from the facts proved, as long as they are rational and founded upon the evidence and not arrived at by speculation or conjecture. *State* v. *Little*, supra; *State* v. *Scielzo*, supra, 196–97.

The defendant's right to be acquitted unless proved guilty beyond a reasonable doubt of every element of the offense charged is a fundamental constitutional right. *State* v. *Smith*, 194 Conn. 213, 217, 479 A.2d 814 (1984). In order to convict the defendant of criminal trespass in the first degree, the state had to prove beyond a reasonable doubt the following essential elements of that offense: (1) that the defendant, knowing he was not privileged or licensed to do so, entered or remained in a building; and (2) that the defendant com-

mitted that act after an order to leave or not to enter had been personally communicated to him by the owner or other authorized person. General Statutes § 53a-107. The defendant claims, inter alia, that the evidence was insufficient to prove beyond a reasonable doubt that he had been personally ordered by the owner or other authorized person not to enter the building in question. We agree.

Construing the evidence most favorably to sustaining the verdict, the jury could reasonably have found the following facts.

During the spring and summer of 1985, the defendant was engaged in a custody dispute with Debra Young, the mother of their six year old son, Kevin. During that time, Young was dating Daniel Parmelee, whom she later married. On April 5, 1985, the defendant went to Parmelee's residence at the Park Washington apartment complex in Middletown and engaged in a brief discussion with Parmelee concerning Young and Kevin. After this discussion, Parmelee told the defendant that Parmelee did not want him on the premises. It also prompted Parmelee to communicate this desire to the building superintendent, James Calan, and to call the police. Later that evening, Officer Paul Mangini of the Middletown police department was dispatched from police headquarters to the defendant's residence where he told the defendant not to harass Young or Parmelee and to stay away from the premises at 256 Washington Street, Parmelee's apartment complex. Mangini never spoke with Young, Parmelee or Calan.

On April 19, 1985, Calan observed a man sitting in a car parked across the street from the apartment complex. He summoned Parmelee, who identified the defendant. The police were then called.

When Officer James Klick of the Middletown police department responded, Calan and Parmelee explained

the situation and asked him to warn the defendant that he was not wanted on the property. Klick went over and spoke briefly with the defendant, who then left the area. Klick did not testify at the trial.

On May 18, 1985, Parmelee, while passing in front of his apartment complex in a car, in which Young and Kevin were passengers, observed the defendant in the front exterior doorway of the lobby of the building. The lobby of the building is a room which contains mailboxes, some chairs and two doors. The exterior doorway, in which the defendant was observed, provides access to and from the sidewalk and was kept unlocked and open to the public. The interior door provides access to the various apartments, was kept locked and could only be opened electrically or with a key. At Parmelee's request, Young and Kevin identified the defendant who was, by the time they observed him, walking on the sidewalk in front of the apartment building. Parmelee called the police shortly thereafter, complaining that the defendant was trespassing. Officer David Gervais responded but, by the time he arrived, the defendant had left the scene. It was this May 18, 1985 incident for which the defendant was subsequently arrested and convicted.

We find the evidence insufficient to sustain the conviction for criminal trespass in the first degree because the state failed to prove that the defendant was ordered personally by the owner of the premises, or other authorized person, not to enter the building.

The jury could reasonably have found that Parmelee personally communicated to the defendant an order not to enter the building. The criminal trespass statute requires, however, that a person enter or remain in a building or other premises after an order to leave or not to enter has been personally communicated to such person "by the owner of the premises or other autho-

rized person." General Statutes § 53-107 (a) (1). The question to be resolved, then, is whether Parmelee, as a tenant, can be considered an "owner" with respect to his order not to enter the public lobby of the apartment building for purposes of § 53-107. In answering this question, we are mindful that the court must construe the statutory language strictly to avoid imposing criminal liability where none is expressly intended by the legislature. *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983).

" 'The word "owner" is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof.' " *Gill* v. *Petrazzuoli Brothers, Inc.,* 10 Conn. App. 22, 27, 521 A.2d 212 (1987), quoting *Hope* v. *Cavallo,* 163 Conn. 576, 580–81, 316 A.2d 407 (1972). Our landlord-tenant law generally presumes that a landlord retains possession, control, and responsibility for all common areas in leased premises, such as the public lobby in this case. Compare General Statutes § 47a-7 (a) (3) (landlord's duty to "keep all common areas of the premises in a clean and safe condition") with General Statutes § 47a-11 (b) (tenant's responsibility to "keep such part of the premises that he occupies and uses as clean and safe as the condition of the premises permit"); see also 49 Am. Jur. 2d, Landlord and Tenant § 806.

Similarly, tort law principles recognize that a landlord, having retained control of common areas, is responsible for their maintenance and repair because he has a right of entry and control of those areas, while no tenant can claim exclusive control of them. *Perkel* v. *Grayson,* 119 Conn. 465, 469–70, 177 A. 534 (1935); *Fonseca* v. *Lavado,* 28 Conn. Sup. 509, 511, 268 A.2d

415 (1970), cited with approval in *State* v. *Tippetts-Abbett-McCarthy-Stratton,* 204 Conn. 177, 184, 527 A.2d 688 (1987); 49 Am. Jur. 2d, supra, § 805. Further, there is nothing in the record before us to suggest that Parmelee's landlord transferred exclusive control of the lobby area to Parmelee. See *Martel* v. *Malone,* 138 Conn. 385, 85 A.2d 246 (1951). There was no evidence that Calan or any other agent of the owner ever conferred such authority upon Parmelee. Therefore, Parmelee, as a tenant in a multi-unit apartment building had no authority to order the defendant not to enter the public lobby of Parmelee's apartment complex.

The jury could reasonably have found that Calan did authorize Klick to order the defendant not to enter the building. Klick, however, did not testify. Beyond the defendant's testimony that Klick never issued such an order to him, there is no evidence of the words spoken between Klick and the defendant.

The jury also could reasonably have found that Mangini ordered the defendant not to enter the building. The mere fact that he is a police officer does not, however, under these circumstances, authorize him to do so. See, e.g., *State* v. *Gordon,* 437 A.2d 855 (Me. 1981). Mangini testified that he never spoke with Calan and, therefore, was not authorized by him. Mangini was sent to the defendant's residence by his shift commander. While Calan could have authorized the police department to issue the order, thus transferring his authority to the officer dispatched, there was no evidence that Calan ever did so. Calan's testimony indicated only that he called the police, without revealing the content of that communication.

Under General Statutes § 53a-107, the state has the burden of proving that an order was personally communicated by an owner or other authorized person. While establishing that Calan was an authorized per-

son, the state failed to prove that he personally communicated the order. Further, while proving that an order was personally communicated, the state failed to prove that the person issuing the order was authorized.

There is error, the judgment of conviction is set aside and the case is remanded to the trial court with direction to render a judgment of acquittal.

In this opinion the other judges concurred.