STATE OF CONNECTICUT *v.* JULIAN DELGADO
(7228)

BORDEN, SPALLONE and JACOBSON, Js.

Argued May 3—decision released August 1, 1989

*Stephanie Clarke,* deputy assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Michael E. O'Hare,* former assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), and criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1). He claims that the burglary and criminal trespass convictions should be reversed because the court's jury instructions permitted verdicts that were not unanimous. He also claims that the conviction in a single trial of both burglary in the first degree and criminal trespass in the first degree violated his double jeopardy rights. We find no error.

The jury could reasonably have found the following facts. The defendant's former girl friend, Wendy Czyrko, and her children were in her apartment. At approximately midnight, the defendant gained entrance to Czyrko's apartment after he unlocked the door with a key and Czyrko released the inside security chain in an attempt to retrieve the key. After forcibly entering the apartment, the defendant struck Czyrko in the mouth with his fist. Before neighbors were able to come to Czyrko's aid, the defendant attempted to stab Czyrko

with a fork and then took a metal leg supporting the front of a wall-mounted sink and used it twice to strike Czyrko twice in the head.

I

The defendant first claims that the court's instruction to the jury regarding burglary in the first degree[1] permitted a verdict that was not unanimous. The basis for this claim is that the court instructed the jury on the alternative elements of burglary—entering unlawfully and remaining unlawfully—without specifically instructing the jury that it must agree on the same alternative. We disagree.

Although the defendant did not properly preserve this claim at trial, it is subject to a limited review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), to determine whether the claim is truly of constitutional proportions or is simply characterized as such by him. *State* v. *Bailey,* 209 Conn. 322, 330 n.4, 551 A.2d 1206 (1988). We conclude that the defendant's claim is not of true constitutional proportion.

The information, amended at trial, charged the defendant with both statutory theories of burglary, namely, that the defendant "entered or remained unlawfully" in violation of General Statutes § 53a-101 (a) (2). The court instructed the jury that if it found that the defendant either entered unlawfully or entered lawfully and thereafter remained unlawfully, those particular elements of the crime had been satisfied.

" 'Where a trial court charges a jury that the commission of any one of several alternative acts would

---

[1] General Statutes § 53a-101 provides in pertinent part: "(a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act.' " (Emphasis in original.) *State* v. *Bailey,* supra, 334, quoting *State* v. *Flynn,* 14 Conn. App. 10, 38, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). Under the facts of this case, the two alternative acts of entering unlawfully and remaining unlawfully were not conceptually distinct.

It is true that in a different factual context we have held that unlawful entry and unlawful remaining can be construed to be conceptually distinct concepts. See *State* v. *Edwards,* 10 Conn. App. 503, 513, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987) (unlawful entry results from lack of permission, license or privilege to enter; unlawful remaining results from lawful entry that later becomes unlawful). In considering whether alternative statutory elements are conceptually distinct for purposes of requiring a unanimity instruction, however, the analysis "turns, not only on the language of the two statutory subsections or elements, but also on the evidence in the case and how the case is presented to the jury in the court's instructions." *State* v. *Velez,* 17 Conn. App. 186, 199, 551 A.2d 421 (1988).

In this case, the defendant's acts of entering and remaining were conceptually indistinct and inseparable. The state's evidence was that the defendant entered Czyrko's dwelling unlawfully and continued to remain there unlawfully. The defendant's theory of defense, supported by the evidence he presented, was that he was a cotenant with Czyrko, and, as such, both his initial entry and his remaining in the apartment were lawful. Thus, the jury's verdict could have resulted only from its determination that the defendant's con-

duct constituted one continuous course of unlawful conduct, namely, that he entered the apartment unlawfully and remained there without any change in his legal status. Under these circumstances, the unlawfulness of his entry determined the unlawfulness of his remaining. The two inexorably intertwined acts were conceptually indistinct.

Furthermore, the defendant's conduct did not "comprise 'separate incidents' implicating alternative or conceptually distinct bases of liability"; *State* v. *Bailey,* supra, 336; and this was not a case where the complexity of the evidence or other factors created a genuine risk of jury confusion. Id., 337. Where these factors are absent, our Supreme Court has rejected a similar unanimity claim. Id., 336–37.

The defendant also claims that the court's jury instruction regarding criminal trespass in the first degree[2] permitted a verdict that was not unanimous. This claim is based also on the court's instructing the jury on the alternative elements of criminal trespass—entering and remaining—without specifically instructing the jury that it must agree on the same alternative. Our discussion of the first jury instruction disposes of this claim.

## II

The defendant's final claim is that the convictions for both burglary in the first degree and criminal trespass in the first degree subjected him to multiple punishment of the same offense in violation of his rights

---

[2] General Statutes § 53a-107 provides in pertinent part: "(a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person . . . ."

against double jeopardy. Although the defendant did not properly preserve this claim at trial, it is reviewable under *State* v. *Evans,* supra. *State* v. *Mancinone,* 15 Conn. App. 251, 273, 545 A.2d 1131 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). The defendant argues that the legislative history behind General Statutes § 53a-101 (a) (2), burglary in the first degree, and General Statutes § 53a-107 (a) (1), criminal trespass in the first degree, indicates that the two offenses are mutually exclusive and are not meant to be applied simultaneously for a single unauthorized entry. We reject this claim.

The defendant's claim invokes that strand of double jeopardy jurisprudence that "protects against multiple punishments for the same offense." *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended"; *Missouri* v. *Hunter,* 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); and "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). "Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to impose." *Albernaz* v. *United States,* 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981). "The issue, though essentially constitutional, becomes one of statutory construction." *State* v. *Rawls,* 198 Conn. 111, 120, 502 A.2d 374 (1985); *State* v. *Madera,* 198 Conn. 92, 109, 503 A.2d 136 (1985).

In reviewing such a double jeopardy claim, "[f]irst, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986). There is no dispute in this case that the two charged offenses arose out of the same transaction. We therefore consider whether the two criminal statutes constitute the same offense for double jeopardy purposes. This requires that we "determine whether the legislature . . . intended that each violation be a separate offense." *Garrett* v. *United States,* 471 U.S. 773, 778, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985).

The traditional polestar in this analysis has been to compare the elements of the offenses in question using the test established in *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). Under *Blockburger,* "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires the proof of a fact which the other does not." Id., 304. It is clear that, as the defendant concedes, under *Blockburger,* burglary in the first degree and criminal trespass in the first degree are not the same offense because each requires proof of a fact that the other does not. Compare footnotes one and two, supra. It is clear also, however, as the defendant argues, that the *Blockburger* test is not a conclusive presumption of law; *Garrett* v. *United States,* supra, 779; but " 'is a "rule of statutory construction," and . . . should not be controlling where, for example, there is a *clear indication* of contrary legislative intent.' " (Emphasis added.) *Missouri* v. *Hunter,* supra, 367.

Thus, the *Blockburger* test as a rule of statutory construction does no more than create a rebuttable pre-

sumption. "Although *Blockburger* creates a presumption as to the actual legislative intent, it is not a blind presumption that may be applied without regard to other relevant evidence of true intent. It would be absurd indeed to apply *Blockburger,* which was meant to help determine legislative intent, in a way that actually defeats what reason and logic dictate to be the intent." *Carawan* v. *State,* 515 So. 2d 161, 167 (Fla. 1987). The United States Supreme Court in *Missouri* v. *Hunter,* supra, 368, found that the Missouri legislature's express provision for double punishment for a compound and predicate crime expressly rebutted the presumption raised by *Blockburger,* namely, that if two statutes constitute the "same offenses" the legislature did not intend to allow a defendant to be punished under both statutes. "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." Id.

The state argues that it is appropriate to go beyond *Blockburger* only when that test discloses that the two offenses are the same, and that we should not go beyond the *Blockburger* test to consider legislative intent when the challenged offenses are different. It would defy reason and logic, however, to give the state, when seeking to impose multiple punishments, the benefit of a rebuttable presumption when the offenses in question are the same under *Blockburger,* yet to deny the defendant, when seeking to avoid multiple punishments pursuant to the constitutional guaranty against double jeopardy, the benefit of a rebuttable presumption when the offenses are different. Furthermore, our Supreme Court implicitly rejected this notion of *Blockburger* as a one-sided presumption in *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93 (1989). In *John,* the court

held that the imposition of multiple punishments for felony murder and manslaughter violated the multiple punishment provision of the double jeopardy clause, notwithstanding that "each offense requires proof of an additional fact that the other does not, [making it appear] from an application of the *Blockburger* test that no double jeopardy violation has occurred." Id., 695. Thus, the *Blockburger* presumption regarding different offenses was found to be rebutted by the court "[o]n the basis of [its] holding in *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985), and . . . [its conclusion] that the legislature contemplated that the two statutory provisions should be treated as a single crime for double jeopardy purposes." Id.; see also *State* v. *Sergi,* 7 Conn. App. 445, 449 n.3, 509 A.2d 56, cert. denied, 201 Conn. 806, 515 A.2d 379 (1986).

Thus, in determining whether a double jeopardy violation exists where the statutes in question are different offenses under *Blockburger,* our task is to determine whether the *Blockburger* presumption that multiple punishments were intended is rebutted on the basis of clear legislative intent to the contrary. We fail to discern any clear legislative intent that the two separate offenses of burglary in the first degree under General Statutes § 53a-101 (a) (2), and criminal trespass in the first degree under General Statutes § 53a-107 (a) (1), were meant to constitute one offense for double jeopardy purposes.

First, the plain language of both General Statutes § 53a-107 (a) (1) and § 53a-101 (a) (2) "affirmatively states an offense for which punishment will be imposed." *Garrett* v. *United States,* supra. In order to be convicted of criminal trespass in the first degree under General Statutes § 53a-107 (a) (1), the state must prove two essential elements: "(1) that the defendant, knowing that he was not privileged or licensed to do

so, entered or remained in a building; and (2) that the defendant committed that act after an order to leave or not to enter had been personally communicated to him by the owner or other authorized person." *State v. LoSacco,* 12 Conn. App. 172, 174–75, 529 A.2d 1348 (1987). The element of notification must be proved by the state beyond a reasonable doubt. Id., 179; see also Comment of Commission to Revise the Criminal Statutes, Connecticut General Statutes Annotated (West) § 53a-107 ("This section is the most serious degree of criminal trespass. It aims at the situation where the actor enters or remains in premises in defiance of an order not to enter, or to leave, personally communicated to him by an authorized person"). Thus, General Statutes § 53a-107 (a) (1) prohibits conduct involving the unlawful occupation of a premises where the actor is personally ordered by the owner or other authorized person to leave and the actor refuses to do so in direct contravention of that order. The legislative purpose of the statute is to "protect any possessor of land, whether titleholder or not, from intrusions by unwanted persons." *State v. Martin,* 35 Conn. Sup. 555, 559, 398 A.2d 1197 (1978).

In contrast, the basic rationale of the offense of burglary is to "[protect] against invasion of premises likely to terrorize occupants. . . . The three degrees of the crime differ only in terms of aggravating factors for which the basic rationale requires different treatment." Comment of Commission to Revise the Criminal Statutes, Connecticut General Statutes Annotated (West) §§ 53a-100 through 53a-106 (General Comments). One of two aggravating factors must accompany the unlawful entry or remaining in order to classify the criminal conduct in question as burglary in the first degree under General Statutes § 53a-101. The first is that the actor "is armed with explosives or a deadly weapon or dangerous instrument." General Statutes § 53a-101 (a) (1).

The second is that the actor "in the course of committing the offense . . . intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone." General Statutes § 53a-101 (a) (2).

Further indicium that the two offenses were intended by the legislature to be separate offenses is that neither General Statutes § 53a-101 nor § 53-107 makes reference to the other. See *Garrett* v. *United States,* supra, 781. In addition, each statutory offense sets out its own penalty rather than using a multiplier of a penalty established for another offense. Id. The penalties set forth in the burglary provisions are not based on a multiplier of the less serious criminal trespass provisions. Burglary in the first degree is a class B felony; General Statutes § 53a-101 (c); and criminal trespass in the first degree is a class A misdemeanor. General Statutes § 53a-107 (b).

Finally, it bears reemphasis that the *Blockburger* presumption is properly rebutted only upon a clear indication of contrary legislative intent. Silence in the legislative history is insufficient to overcome this presumption. "The presumption when [the legislature] creates two distinct offenses is that it intends to permit cumulative sentences, and legislative silence on this specific issue does not establish an ambiguity or rebut this presumption . . . . '[I]f anything is to be assumed from [legislative] silence . . . it is that [the legislature] was aware of the *Blockburger* rule and legislated with it in mind.' " *Garrett* v. *United States,* supra, 793. Ambiguity in the legislative history is also insufficient to overcome the *Blockburger* rule. The rule of lenity is not applicable as an aid for resolving ambiguous legislative history; it is only available as a tool of statutory construction for resolving statutory ambiguities. *Albernaz* v. *United States,* supra, 342; see also *State* v. *Rawls,* supra, 121–22.

As noted by the defendant, the official comments to General Statutes § 53a-108, criminal trespass in the second degree, state that "this section fills a glaring gap in the prior Connecticut law, which did not penalize trespass into one's home . . . unless it was in defiance of an order to leave." Comment of Commission to Revise the Criminal Statutes, Connecticut General Statutes Annotated (West) § 53a-108. We agree with the defendant that this legislative history indicates that the purpose of some criminal trespass provisions is to cover certain types of conduct that are not within the scope of the burglary provisions. We do not believe, however, that this gap filling purpose indicates that the legislature intended these provisions to be used as mutually exclusive substitutes. Whenever the legislature fills a gap in the criminal law, it is fair to infer, absent clear legislative history to the contrary, that it is seeking to provide the executive branch with an addition to its existing law enforcement arsenal, rather than a substitute for an already existing offense.

There is no error.

In this opinion the other judges concurred.

