STATE OF CONNECTICUT *v.* JERRY W. VLASAK
(AC 17222)

Foti, Sullivan and Spallone, Js.

Argued November 9, 1998—officially released March 16, 1999

*Norman A. Pattis*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Christopher Parakilas*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Jerry W. Vlasak, appeals from the judgment of conviction, rendered after a jury

trial, of criminal trespass in the first degree in violation of General Statutes § 53a-107.[1] The defendant claims that (1) the trial court improperly denied him a fair trial by excluding evidence of bias and (2) there was insufficient evidence to support the conviction under § 53a-107. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 26, 1996, the defendant was arrested at a circus held at the St. Bernard's School, located on property owned by the Catholic church. The defendant was a member of a group of animal rights activists who were protesting the treatment of animals at the circus. On several occasions, the protestors were asked to leave the property. Two of the protestors who were videotaping the animals were asked to leave the property by a circus worker. Father Brian Monnerat, pastor of St. Bernard's, who had control and authority over the property, told a group of the protestors that they were on private property and asked them to leave the parish grounds.

Monnerat also asked the Enfield police officers at the scene to keep the protestors off the property. The police officers informed the protestors that they must leave the church property, and the protestors gathered on the public sidewalk by the entrance to the property. The police officers told them that they could not reenter St. Bernard's property, disrupt traffic or disrupt pedestrians' entrance to the grounds. The police officers also informed the protestors of the boundary of the church

---

[1] General Statutes § 53a-107 (a) provides: "A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, he enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to him by the owner of the premises or other authorized person; or (2) he enters or remains in a building or any other premises in violation of a restraining order issued pursuant to section 46b-15 or a protective order issued pursuant to section 46b-38c or 54-1k by the Superior Court."

property and warned them that they would be arrested if they were caught reentering the property. The defendant was subsequently observed reentering the church property and was arrested.

The defendant, who appeared pro se at trial, was convicted of criminal trespass in the first degree. This appeal followed.

I

The defendant first claims that an evidentiary ruling by the trial court impermissibly infringed on his rights under the confrontation clause of the sixth amendment to the United States constitution.[2] Specifically, the defendant argues that the trial court improperly prohibited him from introducing impeachment evidence concerning one of the prosecution's witnesses, Officer Richard Matte. We disagree.

The following additional facts are necessary for a proper resolution of this claim. Matte testified at trial that he had observed the defendant reenter the church property. At the time of trial, Matte was also the plaintiff in a civil lawsuit against the defendant. On two separate occasions, the defendant was given the opportunity to cross-examine Matte.[3] The defendant did not seek to impeach the witness with evidence of bias or motive on either occasion.[4]

---

[2] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[3] On April 15, 1997, Matte testified and was cross-examined by the defendant. Again on April 16, 1997, Matte testified and was cross-examined by the defendant.

[4] During the April 15, 1997 cross-examination of Matte, the defendant did attempt to impeach his testimony through reference to his deposition. Although this deposition was referenced by the defendant, he did not seek to introduce the fact that it was taken as part of a civil lawsuit involving Matte and the defendant. Thus, the defendant never raised the issues of bias, interest or motive.

Instead, the defendant sought during his redirect narrative testimony to introduce evidence of Matte's civil lawsuit against him.[5] The trial court found that the defendant had sufficient opportunity to raise the issue of Matte's lawsuit as evidence to show motive, interest or bias, but failed to do so. As the defendant did not use his opportunities to raise the issue and instead sought to present the evidence during his own narrative testimony, the court found the testimony to be irrelevant and instructed the jury to disregard it. On appeal,

---

[5] At trial, the following colloquy took place:

"[The Defendant]: Officer Matte's the officer who, essentially, effected my arrest. This is the same officer who is now suing me for mental anguish—

"[Assistant State's Attorney]: Objection, Your Honor—

"[The Defendant]:—regarding the arrest.

"[Assistant State's Attorney]: I'd ask that the jury be removed please.

"The Court: The jury is excused. [At which time the jury left the courtroom]

"[Assistant State's Attorney]: This is a gratuitous offering by the [defendant] of a peripheral—or a civil proceeding outside of this which has absolutely no bearing whatsoever on the case at hand. Officer Matte was— testified two days in a row, and the [defendant] had every opportunity to cross-examine him with respect to civil suits or anything arising out of this particular case, but he didn't choose to do that. He chooses to, in his closing argument—which we can also call his testimony—indicate that at this point. I think it's highly inflammatory, and we should have the jury instructed to disregard anything along those lines.

"[The Defendant]: I think this is—it goes a long way toward proving the reliability and—what's the word I'm looking for—the respect or the believability of Officer Matte's testimony, and I did introduce his deposition . . . .

"[Assistant State's Attorney]: Again, Your Honor, he had an opportunity to do that on cross-examination and failed to do so. To bring it up at this point is highly improper.

"[The Defendant]: I'm under oath, Your Honor. I simply stated something that was the truth.

"[The Court]: Just because you're under oath, you can't be—you can't say everything in the world that you want to say. Yes, you had more than ample opportunity to bring that out if you wanted. I don't ever recall hearing that before, and—in the way it's been brought out, and the context it's brought out, and particularly in light of the opportunity you had to bring it out in an appropriate fashion, if, indeed, it would be allowed. Your remarks are not appropriate, and the jury's going to be instructed to disregard that, and you're not to mention it any further. All right, would you bring the jury back, please?"

the defendant argues that the trial court's refusal to allow his testimony concerning Matte's lawsuit was a denial of his sixth amendment right to confrontation. We disagree.

We recognize that "[c]ross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . This right, however, is not absolute, but may bow to other legitimate interests in the criminal trial process. . . . Such an interest is the trial court's right, indeed, duty, to exclude irrelevant evidence." (Citation omitted; internal quotation marks omitted.) *State v. Carter*, 48 Conn. App. 755, 760, 713 A.2d 255, cert. denied, 247 Conn. 901, 719 A.2d 905 (1998). "If the defendant does not specifically request cross-examination on the issue of motive, interest or bias . . . he may waive his right to confront the witness on those issues. . . . This is so because he cannot be heard to complain when he chose not to cross-examine the witness in this respect." (Citations omitted.) *State v. Fullwood*, 199 Conn. 281, 286, 507 A.2d 85 (1986).

"[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the attention of the fact-finder the reasons for giving scant weight to the witness' testimony." (Internal quotation marks omitted). *State v. Yednock*, 14 Conn. App. 333, 339, 541 A.2d 887 (1988). Furthermore, the United States Supreme Court has stated that " '[t]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' . . . *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988), quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).' " *State v. Menzies*, 26 Conn. App. 674, 685, 603

A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992).

In this case, the defendant was afforded an opportunity to cross-examine Matte fully and fairly concerning his credibility in light of his civil lawsuit, but he never raised the issue. "[A] defendant's right of [cross-examination] is not infringed if the defendant fails to pursue a line of inquiry open to him . . . . The test is whether the opportunity to cross-examine existed, not whether full use of such opportunity was made." (Internal quotation marks omitted.) *State* v. *Morant*, 242 Conn. 666, 684, 701 A.2d 1 (1997); *State* v. *Bruno*, 236 Conn. 514, 533, 673 A.2d 1117 (1996). The record does not reflect, nor does the defendant claim, that the trial court placed any restrictions on his ability to cross-examine Matte. Rather, the defendant argues that the confrontation violation occurred when he was not allowed, during his redirect narrative testimony, to raise the issue of Matte's lawsuit and possible bias.

"Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 586, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). Thus, we conclude that the defendant was given a full and fair opportunity to cross-examine Matte, but failed to do so. The defendant's claim that his rights under the confrontation clause were violated is therefore without merit.

We next examine whether the trial court abused its discretion by not allowing the defendant to raise the issue of Matte's civil lawsuit during his redirect narrative testimony. "It is well established that [t]he trial court has broad discretion in ruling on the admissibility

[and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Matos*, 240 Conn. 743, 764, 694 A.2d 775 (1997). After a review of the record, we conclude that the trial court properly exercised its discretion in excluding this testimony.

## II

The defendant next claims that there was insufficient evidence to support his conviction for criminal trespass in the first degree. Specifically, the defendant argues that the state failed to prove beyond a reasonable doubt that he was told by the appropriate party to leave and not to reenter the church property. We disagree.

"When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could have reasonably concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jones*, 50 Conn. App. 338, 362, 718 A.2d 470 (1998).

"[T]o to convict the defendant of criminal trespass in the first degree [under § 53a-107], the state [has] to prove beyond a reasonable doubt the following essential elements of that offense: (1) that the defendant, knowing he was not privileged or licensed to do so, entered or remained in a building [or any other premises]; and (2) that the defendant committed that act after an order to leave or not to enter has been personally communicated to him by the owner or other authorized person." (Internal quotation marks omitted.) *State* v.

*Kinchen,* 243 Conn. 690, 702–703, 707 A.2d 1255 (1998). "The element of notification must be proved by the state beyond a reasonable doubt." *State* v. *Delgado,* 19 Conn. App. 245, 254, 562 A.2d 539 (1989).

The defendant argues that the state failed to meet this burden because Monnerat himself did not personally communicate to him that he was not to reenter the church premises. The record reveals, however, that Monnerat testified on direct examination that the defendant was present on one of the occasions when he asked the protestors to vacate the premises. This was confirmed by another state's witness, Officer Gary Castle, who testified that he saw Monnerat tell the defendant to leave the property.

The defendant also concedes that he was told to leave the property by the police. On appeal, the defendant incorrectly asserts that in *State* v. *LoSacco,* 12 Conn. App. 172, 529 A.2d 1348 (1987), this court held that a police officer was not an authorized person within the meaning of the trespass statute.

In *LoSacco,* we noted that the authorized person, the building superintendent, could have transferred his authority to a police officer, making him or her an authorized person pursuant to § 53a-107. Id., 178. We concluded in *LoSacco* that the police officers were not authorized persons because the state failed to prove that this transfer of authority from the authorized person occurred. Id., 178–79.

In the present case, however, Monnerat[6] testified that he asked the police officer on duty to assist him in removing the protestors from the property. Further, Castle testified that he informed Monnerat that the police officers would help him keep the protestors from trespassing on the property if he told the protestors

---

[6] It is undisputed that Monnerat had authority over the church property.

not to trespass in the presence of the police. Both Castle and Matte testified that Monnerat asked them to keep the protestors off the property and that they were present when Monnerat told a group of protestors, including the defendant, not to reenter the property.

We conclude that the jury reasonably could have determined that Monnerat personally communicated to the defendant an order to leave the property and not to return. We also conclude that there was sufficient evidence in this case for the jury reasonably to have found that Monnerat authorized the police officers to remove the protestors from the church property. Thus, the jury reasonably could have determined that the cumulative effect of the evidence was sufficient to establish that the defendant was guilty beyond a reasonable doubt of first degree trespassing. Accordingly, we find the evidence sufficient to sustain the conviction for criminal trespass in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.