STATE OF CONNECTICUT *v.* LUIS VASQUEZ
(AC 19885)

Landau, Zarella and Daly, Js.

Argued September 28, 2000—officially released October 9, 2001

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael A. Pepper*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Luis Vasquez, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation

of General Statutes § 21a-278 (b),[1] possession of narcot-
ics with intent to sell within 1500 feet of a school in
violation of General Statutes § 21a-278a (b),[2] sale of
narcotics in violation of § 21a-278 (b), sale of narcotics
within 1500 feet of a school in violation of § 21a-278a
(b), conspiracy to sell narcotics in violation of General
Statutes §§ 53a-48 (a)[3] and 21a-278 (b), and conspiracy
to sell narcotics within 1500 feet of a school in violation
of §§ 53a-48 (a) and 21a-278a (b).

The defendant claims that the court improperly (1)
failed to conclude that the conviction of possession of
narcotics with intent to sell within 1500 feet of a school
and the sale of narcotics within 1500 feet of a school
violated his state and federal constitutional rights to be
free of double jeopardy, (2) failed to conclude that the
conviction of conspiracy to sell narcotics and conspir-

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person
who manufactures, distributes, sells, prescribes, dispenses, compounds,
transports with the intent to sell or dispense, possesses with the intent to
sell or dispense, offers, gives or administers to another person any narcotic
substance, hallucinogenic substance other than marijuana, amphetamine-
type substance, or one kilogram or more of a cannabis-type substance except
as authorized in this chapter . . . for a first offense shall be imprisoned
not less than five years nor more than twenty years; and for each subsequent
offense shall be imprisoned not less than ten years nor more than twenty-
five years. . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person
who violates section 21a-277 or 21a-278 by manufacturing, distributing, sell-
ing, prescribing, dispensing, compounding, transporting with the intent to
sell or dispense, possessing with the intent to sell or dispense, offering,
giving or administering to another person any controlled substance in or
on, or within one thousand five hundred feet of, the real property comprising
a public or private elementary or secondary school . . . shall be imprisoned
for a term of three years, which shall not be suspended and shall be in
addition and consecutive to any term of imprisonment imposed for violation
of section 21a-277 or 21a-278. . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy
when, with intent that conduct constituting a crime be performed, he agrees
with one or more persons to engage in or cause the performance of such
conduct, and any one of them commits an overt act in pursuance of such con-
spiracy."

acy to sell those narcotics within 1500 feet of a school violated his state and federal constitutional rights to be free of double jeopardy, (3) instructed the jury that to be guilty of the sale of, possession with intent to sell or conspiracy to sell narcotics within 1500 feet of a school in violation of § 21a-278 (b) did not require an intent to sell within 1500 feet of a school and (4) failed to permit him to show that a confidential informant was the actual seller of the narcotics.[4]

The jury reasonably could have found the following facts. On August 12, 1998, at approximately 6:30 p.m., four New Haven police officers, Keith Wortz, Al Ferraro, Jose Escobar and Pat Helliger, members of the police department's narcotics enforcement unit, were traveling in an unmarked cruiser on Woolsey Street in New Haven and observed people on the porch of 72 Woolsey Street.[5] The police recognized the defendant in an open first floor window that faced out toward the front porch and the street.[6] The police also recognized Gregorio Santiago, who was standing on the front porch next to the window.

Wortz and Ferraro conducted surveillance nearby while the two other officers took cover in the rear seat of the unmarked cruiser. Wortz and Ferraro observed five separate instances in which individuals walked to the front of the 72 Woolsey Street porch, spoke to Santiago and handed him what appeared to be money. Santiago then went to the front window and passed the money to the defendant, who then handed something

---

[4] At oral argument, the defendant withdrew his claim that the conviction of possession of narcotics with intent to sell and the sale of those narcotics constituted a violation of his constitutional rights to be free of double jeopardy.

[5] The parties stipulated that 72 Woolsey Street is within 1500 feet of the Columbus Elementary School.

[6] The first floor was vacant on the day of the defendant's arrest because the former first floor occupants had moved out of their apartment two days prior to the arrest.

back to Santiago, who in turn passed it to the waiting individual. After viewing those transactions, the officers drove to the front of 72 Woolsey Street and exited their vehicle. Escobar went to the rear of the house while the others advanced to the front porch. Helliger detained Santiago while Wortz and Ferraro pursued the defendant. The defendant fled from the first floor room and ran upstairs. Wortz and Ferraro searched the first floor for other suspects and uncovered four white glassine bags that contained a white-brown powder-like substance.[7] They subsequently ascended to the second floor apartment, knocked on the door and were invited in by Robin Roman, who recognized Wortz. The officers entered the apartment, and Wortz arrested the defendant who was seated on the couch. A search of the defendant uncovered nothing. At trial, Roman testified that immediately after the arrest, Wortz knocked on the door of the room occupied by Luis Rivera. She then stated that Rivera opened the door, Wortz entered the room and that she heard them laughing.

I

The defendant claims that the court improperly failed to conclude that his conviction of possession of narcotics with intent to sell within 1500 feet of a school and the sale of narcotics within 1500 feet of a school, both in violation of § 21a-278a (b), violated his state and federal constitutional rights to be free of double jeopardy. The defendant's claim was not preserved because it was not raised at trial. The defendant, however, argues that his unpreserved claim is entitled to appellate review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). The defendant's claim fails to satisfy the third condition set forth in *Golding* because the alleged

---

[7] The substance was found in the room from which the defendant had fled, and a field test conducted by Wortz identified the substance to be heroin, which later was confirmed by the state toxicology laboratory.

constitutional violation does not clearly exist and did not clearly deprive him of a fair trial.

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. It is unnecessary for this court to review all four prongs of *Golding* because the defendant's claim will fail if any one of the conditions is not met. See id., 240. Therefore, this court is free to focus on and respond to the condition most relevant to the defendant's claim. See id.

The defendant's claim fails to satisfy the third prong of *Golding* because no double jeopardy violation exists. The defendant's claim rests on the aspect of double jeopardy that prohibits multiple punishments for conviction of a single offense. "In this context, double jeopardy protection is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . Thus, the determinative question is whether the legislature intended the offenses at issue to be separate. . . . The issue, though essentially constitutional, becomes one of statutory construction." (Citations omitted; internal quotation marks omitted.) *State* v. *Smart*, 37 Conn. App. 360, 365, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187 (1995).

"[T]o prevail on his claim, the defendant must show (1) that the charged offenses arose out of the same act or transaction, and (2) that the two convictions are

in reality the same offense. Multiple punishments are forbidden only if both conditions are met." Id. "For the first prong of the analysis of the defendant's claim, it is necessary to review the information and the bill of particulars." Id. Because all six counts of the state's information allege offenses committed on the same date, at the same time and in the same location, we conclude that the charged offenses arose out of the same act or transaction. The first prong of the analysis, therefore, is satisfied.

"With regard to the second prong of the analysis, the defendant must demonstrate that the two convictions are in reality the same offense. The test for determining whether two charged offenses constitute the same offense for double jeopardy was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). . . . The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . The *Blockburger* analysis focuses on the statutory elements of the two crimes and the charging documents, and precludes examination of the evidence actually presented at trial. . . . If each crime requires proof of a fact that the other does not, the offenses are not the same under *Blockburger*, notwithstanding a substantial overlap in the proof offered to establish the crimes." (Citations omitted; internal quotation marks omitted.) *State* v. *Smart*, supra, 37 Conn. App. 366.

In *Smart*, we noted that "[t]he offense of possession of a narcotic substance with intent to sell requires proof that the defendant possessed a narcotic substance. There is no such requirement for the offense of the sale of a narcotic substance. . . . Likewise, the offense of the sale of a narcotic substance requires proof of a

sale. There is no such requirement for the offense of possession with intent to sell. . . . Therefore, under *Blockburger* the two offenses are not the same, nor do they stand in relation of greater and lesser included offenses." (Citations omitted.) Id., 368; see also *State* v. *Devino*, 195 Conn. 70, 75, 485 A.2d 1302 (1985) (possession of cocaine not lesser included offense of crime of sale of cocaine); *State* v. *Brown*, 163 Conn. 52, 63, 301 A.2d 547 (1972) (possession of heroin not lesser included offense of crime of sale of heroin).

Similarly, in the present case, the possession of narcotics with the intent to sell within 1500 feet of a school and the sale of those same narcotics within 1500 feet of a school are not the same nor do they stand in relation of greater and lesser included offenses. Although *Smart* involved a conviction under § 21a-278 and the conviction at issue in this case is pursuant to § 21a-278a, each offense requires proof of the same additional elements that were required for the conviction in *Smart*, as previously set forth. Therefore, under the *Blockburger* analysis, the defendant's claim must fail.

We further consider the question of legislative intent. "The *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history. . . . Where there is no clear indication of a contrary legislative intent, however, the *Blockburger* presumption controls." (Citation omitted; internal quotation marks omitted.) *State* v. *Smart*, supra, 37 Conn. App. 368.

Section 21a-278a (b) does not indicate, on its face, whether the legislature intended to prohibit multiple punishments for conviction of (1) possession of narcotics with intent to sell within 1500 feet of a school and (2) sale of narcotics within 1500 feet of a school. The legislative history of Public Acts 1987, No. 87-341, which included the provisions codified in § 21a-278a, is

instructive. In his opening remarks on the bill, Representative William A. Kiner noted that it created "[t]hree new *categories* of crime," and described those categories as the groupings ultimately contained in subsections (a), (b) and (c) of § 21a-278a. (Emphasis added.) 30 H.R. Proc., Pt. 24, 1987 Sess., p. 8656, remarks of Representative William A. Kiner. Representative Kiner's use of the word "categories" manifests an intention that a set of several distinct crimes be encompassed under subsection (b), not just one. We therefore conclude that the legislature intended possession with intent to sell within 1500 feet of a school and sale within 1500 feet of a school to be separate crimes.

Our analysis under *Blockburger* and review of the legislative history lead us to conclude that the defendant's claim of a double jeopardy violation is unfounded. Therefore, a clear constitutional violation does not exist, and the defendant's claim fails the third prong of the *Golding* analysis.

## II

The defendant next claims that the court improperly failed to conclude that the conviction of conspiracy to sell narcotics and conspiracy to sell those same narcotics within 1500 feet of a school violated his state and federal constitutional rights to be free of double jeopardy.[8] Although the defendant concedes that his claim was not properly preserved at trial, he argues that it nonetheless is reviewable under *Golding*. We agree that his claim is subject to review because it satisfies the first two prongs of *Golding* in that it raises a constitutional claim that involves a fundamental right, and the record is adequate for review.

---

[8] The state concedes that the conviction violates the defendant's rights to be free of double jeopardy. Because we are not bound to accept a party's concessions on appeal, we will, nonetheless, analyze the issue of whether a double jeopardy violation occurred. See *State* v. *Harris*, 60 Conn. App. 436, 443, 759 A.2d 1040, cert. denied, 255 Conn. 907, 762 A.2d 911 (2000).

The defendant's claim also satisfies the third prong of *Golding* because it is clear from the record that a double jeopardy violation exists. "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute. . . . For such a violation, only the single penalty prescribed by the statute can be imposed." (Citations omitted; internal quotation marks omitted.) *State* v. *Kitt*, 8 Conn. App. 478, 489, 513 A.2d 731, cert. denied, 202 Conn. 801, 518 A.2d 648 (1986); see also *State* v. *Howard*, 221 Conn. 447, 462, 604 A.2d 1294 (1992).

Finally, the defendant's claim satisfies the fourth prong of the *Golding* analysis because the state has failed to demonstrate harmlessness of the alleged double jeopardy violation beyond a reasonable doubt. The defendant was convicted of two separate conspiracy offenses and ultimately was penalized for both offenses. In a case such as this, however, "only the single penalty prescribed by the statute can be imposed." (Internal quotation marks omitted.) *State* v. *Kitt*, supra, 8 Conn. App. 489. Thus, the defendant's dual sentences for the two separate conspiracy convictions were not harmless and cannot stand. On remand, the court is directed to merge the conviction on the two conspiracy offenses and to vacate the sentence for one of them.[9]

### III

The defendant next claims that the court improperly instructed the jury that to be guilty of the sale of, possession with intent to sell or conspiracy to sell narcotics

[9] See *State* v. *Chicano*, 216 Conn. 699, 721–25, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

within 1500 feet of a school in violation of § 21a-278a (b) did not require an actual intent to sell within 1500 feet of a school. Once again, the defendant did not properly preserve this claim at trial and argues that it is subject to *Golding* review. We agree that the record is adequate for review and that the defendant raises a constitutional claim, thereby satisfying the first two requirements of *Golding*.

"[A]n improper instruction on an element of an offense . . . is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998). "It is the duty of the court, in charging the jury in a criminal case, to give to them such instructions as may be required to enable them to understand the nature of the offense charged and the questions which they are to decide, to weigh the evidence applicable to such questions, and to intelligently decide them." (Internal quotation marks omitted.) *State* v. *Fletcher*, 10 Conn. App. 697, 698–99, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988). "[W]hen it appears, upon an inquiry by the jury, that they have failed to understand a principle of law stated in the charge, it is the duty of the court, upon the request of counsel, to further explain the doctrine in question." (Internal quotation marks omitted.) Id., 701. "A supplemental charge . . . [as involved herein] enjoy[s] special prominence in the minds of the jurors' because it is fresher in their minds when they resume deliberation." (Internal quotation marks omitted.) Id., 702. Because the defendant's claim satisfies the first two prongs of *Golding*, we now consider the third requirement in the analysis.

We conclude that the alleged constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial. "[T]he plain language of § 21a-278a (b) requires as an element of the offense an intent to sell or dispense the narcotics at a location that is

within [1500] feet of a school. The state is not, however, required to prove that the defendant knew that this location was within the zone. . . . The mental state of knowledge that the location is within the [1500] foot zone is not set forth in § 21a-278a (b). . . . If the legislature had wanted to make knowledge as to location of a school an element of the offense, it would have done so by specifically stating that the defendant possessed the narcotics with the intent to sell or dispense at a location that the defendant knew was in, or on, or within [1500] feet of a school. . . . Thus the plain language of § 21a-278a (b) dictates only one construction. While 'knowledge' on the part of the defendant as to location is not an element of § 21a-278a (b), the state is required to prove that the defendant intended to sell or dispense those drugs in his or her possession at a specific location, which location happens to be within [1500] feet of an elementary or secondary school." (Citations omitted.) *State* v. *Denby*, 235 Conn. 477, 482–83, 668 A.2d 682 (1995). We therefore conclude that the court's instructions to the jury were proper.

## IV

The defendant claims finally that the court improperly failed to permit him to present evidence showing that the police officer who identified him had lied to protect a confidential informant who was the actual seller of the narcotics.

The following facts and procedural history are necessary to the disposition of the defendant's claim. Roman was presented as a defense witness and stated outside the jury's presence that she believed that Rivera was a police informant. The purpose of her testimony was to impeach Wortz's credibility. The court sustained the state's objection to such testimony on the grounds of hearsay and relevance.

The defendant claims that an evidentiary ruling by the court impermissibly infringed on his rights under the confrontation clause of the sixth amendment and under the fourteenth amendment to the United States constitution, and article first, § 8, of the constitution of Connecticut. Specifically, the defendant argues that the court improperly prohibited him from introducing impeachment evidence concerning one of the prosecution's witnesses. In this case, however, Wortz testified at trial, and the defendant had an opportunity to cross-examine him.

"It is well established that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Vlasak*, 52 Conn. App. 310, 315–16, 726 A.2d 648 (1999), appeal dismissed, 252 Conn. 228, 746 A.2d 742 (2000). "Our case law recognizes the right of a defendant to introduce evidence that indicates that another person, not the defendant, committed the crime with which the defendant is charged. . . . The defendant must, however, present evidence that directly connects a third party to the crime with which the defendant has been charged. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . . The rules of relevancy govern both the initial presentation of third party culpability evidence, and the admissibility of particular evidence in that regard. . . . Whether third party culpability evidence is direct enough to be admissible is ultimately a matter of the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 224 Conn. 196, 202, 618 A.2d 494 (1992).

"If the defendant does not specifically request cross-examination on the issue of motive, interest or bias, however, he may waive his right to confront the witness on those issues. . . . This is so because he cannot be heard to complain when he chose not to cross-examine the witness in this respect." (Citation omitted.) *State* v. *Fullwood*, 199 Conn. 281, 286, 507 A.2d 85 (1986).

Here, the defendant was afforded an opportunity to cross-examine Wortz fully and fairly concerning his credibility, but the defendant never raised that issue. A defendant's right to cross-examine is not infringed if he fails to pursue a line of inquiry open to him. The test is whether the opportunity for cross-examination existed, not whether full use of such opportunity was made. The record does not reflect nor does the defendant claim that the court placed any restrictions on his ability to cross-examine Wortz. Rather, the defendant argues that his confrontation rights were violated when he was not allowed during his defense to raise the issue of Wortz's possible bias. After a review of the record, we conclude that the court properly exercised its discretion in excluding Roman's proffered testimony.

The judgment is reversed in part and the case is remanded with direction to merge the conviction on the two conspiracy offenses and to vacate the sentence for one of them. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.